**In re Matthew Ammon FRIEND, Volna Jolene Friend, Debtors.**

**FCC NATIONAL BANK/FIRST CARD, Plaintiff,**

v.

**Matthew Ammon FRIEND, Volna Jolene Friend, Defendants.**

**Bankruptcy No. 93–40023.
Adversary No. 93–4040.**

United States Bankruptcy Court,
W.D. Missouri,
Kansas City Division.

June 17, 1993.

Linda S. Tarpley, Kramer and Frank, P.C., Kansas City, MO, for plaintiff.

Robert G. Fisher, Independence, MO, for defendants.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

FCC National Bank/First Card ("Plaintiff") objected to the dischargeability of defendants/debtors' ("Debtors") credit card debt pursuant to 11 U.S.C. § 523(a)(2)(A). Debtors responded that plaintiff's complaint is not substantially justified and requested reimbursement of the attorney's fees and costs incurred to defend this adversary action. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that debtors' obligations to plaintiff are dischargeable. I further find that debtors are entitled to attorney's fees pursuant to 11 U.S.C. § 523(d).

### FACTUAL BACKGROUND

Sometime prior to July 10, 1992, debtors received a mailing from plaintiff advising them that they had been pre-approved for a $3000 credit line. Upon simply sending in the enclosed coupon, a credit card would be issued in debtors' names. On or before July 10, 1992, debtors returned the coupon and were sent credit cards by plaintiff. In addition, debtors received another mailing in July or August of 1992, as a "practical benefit of [their] new First Card credit card membership," containing a number of checks which could be immediately used to access this pre-approved credit line. *See* debtors' exhibit # 4. As of the date the debtors mailed their coupon back to plaintiff, both debtors were employed, although Mrs. Friend was on a maternity leave. Their baby was born on July 15, 1992. Thereafter, in August 1992, Mr. Friend was laid off from his job. Mr. Friend started a new job on September 7, 1992. Although his hourly pay at the new job was greater than the pay at his prior job, it involved less overtime, so his take-home pay was less. He was, however, promised a raise in six weeks which would allow his new salary to match his previous income.

On September 10, 1992, the debtors negotiated one of the checks supplied by plaintiff and obtained a $3000 cash advance. Some twelve (12) days later, debtors made a payment of $986.58 on a signature loan at a credit union, and a payment of $933.21 on a Visa bill. Since both of these loans were charging a higher rate of interest than that charged by plaintiff, debtors testified they believed that they would be lowering their total monthly payments by using the cash advanced to pay on these other obligations. Debtors used the remainder of the $3000 for payment of household expenses.

As of September 10, 1992, the day the $3000 was obtained, Mrs. Friend still intended to return to work following her maternity leave. However, on September 19, 1992, she became ill and blacked out. She saw her physician on September 22, 1992, and upon his advice she did not return to work as planned. In addition, Mr. Friend did not receive the raise he had been promised by his employer.

On October 10, 1992, the debtors sat down together to work out a family budget in light of their changed circumstances. They realized at that time that they did not have adequate funds with which to pay their ongoing living expenses and to make monthly payments on their debts. At the suggestion of Mrs. Friend's father, they contacted an attorney, on October 15, 1992, who recommended that they file bankruptcy. Such attorney also advised them that pending the filing of the case, they should not pay any of their bills because they did not have sufficient funds with which to pay all of their bills. The bill due plaintiff, dated October 6, 1992, was due on October 31, 1992. Debtors' Chapter 7 case was filed on January 7, 1993.

### DISCUSSION

Plaintiff's complaint is based upon 11 U.S.C. § 523(a)(2)(A), which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). In determining whether a particular debt falls within one of the dischargeability exceptions in section 523(a)(2)(A), the statute should be construed strictly against the objecting creditor and liberally in favor of the debtor. 3 Lawrence P. King et al., *Collier on Bankruptcy*, ¶ 523.05A, at 523–19 (15th ed. 1993) (citations omitted); *see Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987) ("[A]ny evidence presented must be viewed consistent with the congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code."). In order to succeed under section 523(a), the objecting party must prove each element of a particular section 523(a) discharge exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). While plaintiff stated in its complaint that debtors obtained the $3000 at issue here by false pretenses, false representation, or actual fraud, no evidence was presented to prove debtors obtained the funds by false pretenses or false representation. In fact, plaintiffs would have a heavy burden to prove debtors obtained the $3000 by false pretenses or false representation, since plaintiff sent the checks to debtors unsolicited and at no time indicated to debtors they were to cease use of the credit cards or checks.[1] Plaintiff, therefore, must prove that debtors obtained the $3000 cash advance by actual fraud.

To establish fraud under section 523(a)(2)(A), the following five elements must be proved:

(1) that the debtor made representations;

(2) that at the time the representations were made the debtor knew them to be false;

(3) that the debtor made the representations with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on the representations; and

(5) that the creditor sustained the alleged injury as a proximate result of the representations.

*Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n. 1 (8th Cir.1987); *Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (Bankr.E.D.Cal. 1988) *on remand*, 89 B.R. 840 (Bankr. E.D.Cal.1988); *FCC Nat'l Bank v. Bartlett (In re Bartlett)*, 128 B.R. 775, 779 (Bankr. W.D.Mo.1991); *Citicorp Credit Serv. v. Hinman (In re Hinman)*, 120 B.R. 1018, 1021 (Bankr.D.N.D.1990).

■ With respect to the first element, credit card use carries the representation that the buyer has the intention of repaying the charge. *Bartlett*, 128 B.R. at 779; *Hinman*, 120 B.R. at 1021; *see also Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 727 (Bankr.N.D.Ga. 1985) (noting that this is the majority view). Therefore, that element is met.

■ The second element requires plaintiff to prove that debtors made a false representation as to their intent to repay the debt. Nothing in the testimony of debtors indicates they knowingly made a false representation about their intent to repay the debt. At the time the charge was incurred, Mr. Friend had started a new job with prospects for a raise within six weeks. Ms. Friend still intended to return to work following her maternity leave. Plaintiff had mailed the debtors the unsolicited checks with a very seductive letter indicating debtor's circumstances were precisely the emergencies for which such

---

**1.** *See First Nat'l Bank v. Roddenberry (In re Roddenberry)*, 701 F.2d 927, 932 (11th Cir.1983), which holds that a credit card holder obtains money or property by false pretenses or false representation only after the issuer has clearly communicated to the cardholder that its right to possess and use the card has been representation only after the issuer has clearly communicated to the cardholder that its right to possess and use the card has been revoked.

checks should be used.[2] Debtors used only one of the checks and never used the pre-approved credit cards. They used such funds to pay off existing debt which was accruing interest at a higher rate than that charged by plaintiff, and to pay household expenses. There is no evidence that any of the funds were used to purchase luxury goods. When debtors realized the seriousness of their financial condition, in early October, 1992, they immediately sought advice, first from Mrs. Friend's father, then from a bankruptcy attorney. Debtors testified that prior to that time they believed that they would be able to pay their obligations, and had no intent to file bankruptcy to discharge such obligations.

▮ Recognizing that direct proof of an individual's intention and purpose is nearly impossible to prove, case law has developed a list of objective or circumstantial factors which a creditor might use to infer intent. *See In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Blackburn*, 68 B.R. 870, 879 (Bankr.N.D.Ind.1987). These objective or circumstantial factors, much like the "badges of fraud," are:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Did the debtor make multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The debtor's financial sophistication;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*Sears, Roebuck, and Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 757 (Bankr.N.D.Ind. 1986); *Blackburn*, 68 B.R. at 880; *Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bankr.N.D.Ga. 1985). Plaintiff proved none of the objective factors which give rise to an inference of fraudulent intent. More than three months elapsed between the charge and the filing of the bankruptcy petition. Debtors did not consult an attorney about filing bankruptcy until thirty-five days after the charge. Debtors made only one charge on the account. At the time of the cash advance, Mr. Friend had started a new job, after being laid off, and debtors' financial condition seemed to be improving. While plaintiff states that debtors exceeded their credit limit, a review of the statements indicates that the cash advance of $3000 was within the pre-approved credit limit, and the additional charges represent late charges and interest assessed by plaintiff. No multiple charges were made on the same day. These debtors are not financially sophisticated, as evidenced by the fact that they had never developed a budget prior to October 10, 1992. There was no sudden change in their buying habits.

---

**2.** The communication from plaintiff began as follows:

"Enclosed is a little bit of luck for when you may be short of some.
What this package actually contains is a practical benefit of your new First Card Credit Card membership; First Card Checks. Now, expenses that hit you out of nowhere won't force you to use money meant for other things. Or money that isn't there.

. . . . . .

You may have thought that between a credit card and the money in your bank accounts, you have the resources to handle any situation that can be expected.
But what about the unexpected? The car repair bill between paychecks. The plumber's charge when a water pipe burst. Or even the sofa you've been eyeing, which finally goes on sale.
These situations often happen when your bank balances aren't where you need them to be. That's where First Card Checks come in."
Debtor's Exhibit # 4.

And, plaintiff offered no evidence that any of the purchases were made for luxuries. In fact, debtors testified that, other than paying off existing obligations, they used the remainder of the funds to pay household expenses. Thus, plaintiff has not proven the second element necessary for fraud, namely that the debtors did not intend to repay plaintiff's obligation at the time the charge was incurred. I need not reach the last three elements, for if debtors did not knowingly make a false representation, they could not have intended to deceive plaintiff, nor could plaintiff have relied upon the false representation to its detriment.

For all those reasons, debtors' obligation to plaintiff is dischargeable.

■ I turn now to the issue of attorneys' fees. Debtor's counsel has submitted a statement, and testified, that fees of $852 were incurred in defending this action. Plaintiff has not challenged the reasonableness of such fees.

■ While the Bankruptcy Code excepted certain debts from discharge in section 523(a)(2), Congress enacted section 523(d) to "discourage creditors from initiating proceedings to obtain a false financial statement exception to discharge in hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees." S.Rep. No. 989, 95th Cong.2d Sess. 80 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5866. Section 523(d) provides:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. 523(d). In order for the debtor to prevail on a motion for attorney's fees un-

der section 523(d), five elements must be satisfied: (1) the creditor must bring a dischargeability complaint under section 523(a)(2); (2) the complaint must concern a consumer debt; (3) the debt must be found to be dischargeable; (4) the court must find that the creditor's complaint was not substantially justified; and (5) there must be no special circumstances which would make the award of attorney's fees unjust. *Beneficial of Missouri, Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922, 927 (Bankr. W.D.Mo.1991). *See also Manufacturers Hanover Trust Co. v. Cordova (In re Cordova)*, 153 B.R. 352 (Bankr.M.D.Fla.1993). *Chevy Chase, F.S.B. v. Kullgren (In re Kullgren)*, 109 B.R. 949, 953 (Bankr. C.D.Cal.1990). The plaintiff brought this dischargeability complaint under section 523(a)(2). The complaint concerned a consumer debt, and I have found the debt to be dischargeable.

■ Once this Court finds that the debt is dischargeable, plaintiff must demonstrate to this Court that the complaint was substantially justified. Substantially justified means more than frivolous, or undeserving of sanctions. *Pierce v. Underwood*, 487 U.S. 552, 564, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). To prove a complaint was substantially justified, creditor must prove the complaint had a reasonable basis in law and fact. *FCC Nat'l Bank v. Dobbins (In re Dobbins)*, 151 B.R. 509, 512 (W.D.Mo.1992). *Shurbier* held that the court should award attorney's fees to the debtor "whenever the court finds that the plaintiff proceeded with its case past a point where Plaintiff knew or should have known that it could not carry its burden of proof." 134 B.R. at 928. Before filing a section 523(a)(2) complaint, the plaintiff "must ascertain that it has sufficient facts to support each of the elements necessary to prove its claims." *Kullgren*, 109 B.R. at 954. As shown, plaintiff was able to prove just one of the required five elements to establish fraud.

Plaintiff's representative testified that it determines whether to litigate the dis-

chargeability of a credit card debt based on four factors.[3] However, plaintiff's test is not in keeping with the dischargeability requirements as set out in the Code and the list of objective factors established by case law as discussed *supra.* As shown, cases have established twelve factors considered by courts in determining whether an intent to deceive can be inferred. Prior to filing this action, an attorney for plaintiff appeared at the § 341 Meeting of Creditors and inquired of debtors. The answers given at that meeting were consistent with those given later by debtors at trial; as shown, none of these twelve factors run against the debtors. The filing of this action by plaintiff was not substantially justified. Further, plaintiff offered no evidence that there are special circumstances involved in this case that would make an award of attorney's fees and costs unjust.

## CONCLUSION

In accordance with the discussion above, I find the debt which is the subject of this dischargeability complaint to be dischargeable, and as such judgment will be entered in favor of the defendant. I further find that plaintiff's complaint was not substantially justified and I, therefore, grant debtor's motion for attorney's fees. An Order consistent with this Memorandum Opinion will be entered this date.

---

**3.** These factors are as follows:
(1) the account was opened within one year of filing the petition;
(2) debtors obtained $500 in cash within the previous sixty days of filing the petition;
(3) debtors made no payments within the last six months;
(4) debtors are twenty percent over the credit limit.