In re John L. REACH, Jr., and
Debbie W. Reach, Debtors.

AT & T UNIVERSAL CARD SERVICES
CORPORATION, Plaintiff,

v.

Debbie REACH, Defendant.

Bankruptcy No. 96–02488–TOM–7.
Adversary No. 96–00325.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

July 16, 1997.

Alan Furr, Birmingham, AL, for Defendant.

William Halcomb, Birmingham, AL, for Plaintiff.

Thomas Reynolds, Birmingham, AL, Trustee.

## MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Chief Judge.

This proceeding is before the Court following a trial on the merits of the Complaint filed by AT & T Universal Card Services Corporation (AT & T). Appearing at the June 10, 1997, trial were Alan C. Furr, attorney for Ms. Reach, and William M. Halcomb, attorney for AT & T. This Court has jurisdiction. 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). The Court has considered the pleadings, the testi-

mony, the exhibits, the arguments of counsel and the law and finds and concludes as follows.[1]

## FINDINGS OF FACT

John L. Reach, Jr., and Debbie W. Reach filed this petition for relief under Chapter 7 of the Bankruptcy Code on April 12, 1996. AT & T filed its complaint on July 15, 1996, alleging that Ms. Reach's debt to AT & T of $3,789.64 should be declared to be nondischargeable under 11 U.S.C. § 523(a)(2)(A) and that it should be awarded attorney's fees and costs pursuant to its contract. The debt arose as the result of cash advances and charges made on a credit card issued by AT & T to Ms. Reach. Only Ms. Reach's name appears on the account and she is the only defendant in this proceeding.

Ms. Reach paid her account with AT & T in full in August of 1995. No charges or cash advances were taken in the month of September 1995 and, as of October 1, Ms. Reach had a credit balance of $94.41. During October 1995, cash advances of $1,680.00 were taken against the card and charges of $157.75 were made. During November 1995, cash advances of $1,204.00 were taken and charges of $491.34 were made. No payment on the account was made during November. A payment of $40.00 was made on December 4, 1995. No other transactions on the account occurred after that date. The cash advances were taken in the following manner:

| Date | Amount |
|------|--------|
| 10/17 | $600.00 |
| 10/27 | $480.00 |
| 10/28 | $600.00 |
| 11/18 | $600.00 |
| 11/22 | $131.00 |
| 11/23 | $201.00 |
| 11/24 | $ 21.00 |
| 11/24 | $251.00 |

Ms. Reach testified that she did not take the cash advances and was not aware that they had been made. She assumes that her husband was responsible for the cash advances. She stated that there was only one card issued on this account and that it was in

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

her name only. Her husband was not an authorized signatory on the account and was not authorized by her to take the cash advances. She speculated that he removed the card from either her purse or the filing cabinet at their home without her knowledge. She did not know how he obtained the personal identification number which is supposedly necessary to receive cash advances. Ms. Reach testified that her husband went into a rehabilitation facility early in 1996 and that his taking of these cash advances was "related to that." She did not further elaborate except to say that her husband's problems had ultimately led to the need for this bankruptcy filing and their divorce.

Ms. Reach testified that she first became aware of these cash advances in early December 1995 when she either saw a billing statement or received a phone call from AT & T. She stated that her husband usually paid the bills and she did not always see the statements. According to her testimony, when she became fully aware of the amount of debt which had been incurred on several charge cards, Ms. Reach contacted each of the creditors to attempt to work out a payment plan. AT & T's account notes indicate that such a call was received from Ms. Reach on March 15, 1996. The notes also indicate that Ms. Reach had previously informed them that she was experiencing financial difficulties due to marital problems. Ms. Reach attended some form of credit counseling but could see no other alternative to filing bankruptcy. She first contacted an attorney sometime in late March and filed this case in mid-April.

At the time of the filing of the petition for relief, the Reaches indicated a household income of $4,200.00 per month and expenses of $3,189.00 on their schedules. Ms. Reach's testimony regarding their income and expenses was approximately the same but, as to any discrepancy, the amounts listed in the schedules are more likely to be accurate than the testimony over a year later. The expenses listed did not include payments on the unsecured debts scheduled. The Reaches scheduled $15,539.34 in unsecured, nonpriority debt. The majority of this debt was for credit cards or open accounts.

## CONCLUSIONS OF LAW

■ Section 523 outlines the exceptions to discharge in bankruptcy proceedings. Exceptions to discharge are to be construed strictly against the objecting creditor in order to give effect to the fresh start policy of the Bankruptcy Code. *Hope v. Walker, (In re Walker)*, 48 F.3d 1161 (11th Cir.1995); *Equitable Bank v. Miller, (In re Miller)*, 39 F.3d 301 (11th Cir.1994). Toward this goal, the objecting creditor bears the burden of proving the elements of nondischargeability by a standard of preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Specifically, § 523(a)(2)(A) provides that a debt for money, property, services, or an extension, renewal, or refinancing of credit will not be discharged to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In 1983, the Eleventh Circuit held that under § 17a(2) of the Bankruptcy Act (the predecessor to the present 11 U.S.C. § 523(a)(2)) that

> only after ... clear revocation has been communicated to the cardholder will further use of the card result in liabilities obtained by 'false pretenses or false representation' within the meaning of section 17a(2)'s exemption from discharge.

*First National Bank of Mobile v. Roddenberry*, 701 F.2d 927, 932 (11th Cir.1983). In the instant case, there had been no revocation of Ms. Reach's right to possession and use of her card prior to the incurrence of the charges in question. Therefore, according to Eleventh Circuit law, the debt was not obtained by false pretenses or false representation.

Section 523(a)(2)(A) also applies to debts for money or property obtained by actual fraud. In *Roddenberry*, the Eleventh Circuit Court noted that the changes to § 17a(2) when it was recodified at 11 U.S.C. § 523(a)(2) "may alter the outcome in certain cases where debtors obtain credit without a present intention of repayment" and that "one commentator suggests that Congress'

addition of the term 'actual fraud' to the 'false pretenses and false representation' language of section 17a was intended to eliminate the distinction between overt and implied misrepresentation." *Id.* at 930 n. 3. The Court did not express an opinion, at that time, regarding the effect of the additional language. Bankruptcy courts within the Eleventh Circuit have since held that a credit card debt may still be held to be nondischargeable even if the cardholder's rights were not revoked if there was actual fraud. *See American Express Travel Related Services Company, Inc. v. McKinnon (In re McKinnon),* 192 B.R. 768 (Bankr.N.D.Ala. 1996); *Chase Manhattan Bank v. Ford (In re Ford),* 186 B.R. 312 (Bankr.N.D.Ga.1995); *Chase Manhattan Bank v. Carpenter (In re Carpenter),* 53 B.R. 724 (Bankr.N.D.Ga. 1985).

■ The elements to prove "actual fraud" under § 523(a)(2)(A) are based on the traditional elements of common law fraud. *McKinnon,* 192 B.R. at 771. Thus, to prevail under that section, a creditor must prove that:

(1) the debtor made representations;

(2) at the time, the debtor knew the representations were false;

(3) the debtor made the false representations with the purpose and intention of deceiving the creditor;

(4) the creditor justifiably relied on such representations; and

(5) the creditor sustained a loss as a result of the representations.

*See, Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *McKinnon,* 192 B.R. at 771; *Carpenter,* 53 B.R. at 729. The first element comes into question in a credit card case such as this one because the debtor and the creditor have no actual face-to-face transactions at the time the debts in question are incurred. "Consequentially, the cardholder cannot be said to have directly represented anything to the issuing bank." *Ford,* 186 B.R. at 317.

Some courts have solved this problem by holding that, in using a credit card, a debtor represents that he has the intent and the ability to repay the debt so incurred. *See*

*Signet Bank v. Rawoot (In re Rawoot),* 14 F.3d 596 (4th Cir.1993); *Sun Bank, N.A. v. Stokes (In re Stokes),* 155 B.R. 785 (Bankr. M.D.Fla.1993); *Citibank v. Rodriguez (In re Rodriguez),* 138 B.R. 112 (Bankr.S.D.Fla. 1992); *Citicorp Credit Services v. Hinman (In re Hinman),* 120 B.R. 1018 (Bankr. D.N.D.1990). To hold that a debtor is representing that he has the ability to repay the debt which he is charging seems to ignore the very nature of a credit card debt. Many, if not most, consumers use credit cards specifically because they do *not* have the present ability to repay the debt. *See Chase Manhattan Bank v. Murphy (In re Murphy),* 190 B.R. 327, 332 (Bankr.N.D.Ill.1995).

■ Credit card transactions are governed by contractual agreements between the debtors and the card issuers. These agreements typically bind the debtor to repay the debt in at least minimum specified installments over time with interest. In using a credit card, a debtor represents only that he intends to abide by that agreement and has made a false representation only if, at that time the debt is incurred, he intends to breach his agreement. Therefore, a credit card debt is not nondischargeable for "actual fraud" unless the debtor did not intend to honor the terms of the credit agreement at the time the charges were made or the cash advances were taken. *See American Express Travel Related Services Company, Inc. v. McKinnon (In re McKinnon),* 192 B.R. 768 (Bankr. N.D.Ala.1996); *Chase Manhattan Bank v. Ford (In re Ford),* 186 B.R. 312 (Bankr. N.D.Ga.1995); *Chase Manhattan Bank v. Carpenter (In re Carpenter),* 53 B.R. 724 (Bankr.N.D.Ga.1985).

■ In the instant case, AT & T failed in its proof in two ways. First, it did not prove that it was actually Ms. Reach who made the charges and took the cash advances in question or that they were made by someone else with her authorization. Ms. Reach testified that, while she may have made a few of the nominal charges on the account, she did not take the cash advances and did not know at the time that they had been made. Her testimony was undisputed and is consistent with her subsequent actions. Therefore, if Ms. Reach did not take the cash advances,

she made no representations, implied or otherwise, to AT & T regarding their repayment.

Secondly, AT & T also failed to prove that, even if Ms. Reach did take the cash advances herself, they were taken by her with the intent to not repay them according to the terms of her agreement. As an intent not to repay can rarely be shown by direct evidence, such intent may be inferred from the totality of the circumstances. Some courts have cited a list of twelve factors relevant to the determination of a debtor's intent to repay.[2] These twelve factors were initially listed in *Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bankr.N.D.Ga.1985). In that case, the plaintiff cited those factors in its brief to the court as a compilation of factors which other courts had considered on the issue. *Id.* The court went on to hold, however, that the determination of intent must be made on a case by case basis and the factors listed may or may not be helpful. *Id.*

In the instant case a review of all relevant circumstances fails to convince this Court that Ms. Reach had the requisite intent to breach her agreement with AT & T at the time the cash advances were taken. She and her husband had just paid the full balances due on all of their credit cards, including AT & T, in August 1995. Therefore, the couple had very little debt at the time the charges were incurred. The large amount of debt was apparently reached in a short period of time because charges were being made on several cards simultaneously. No charges or cash advances were made on this card after December 1995. Ms. Reach contacted the credit card issuers and attempted to work out a payment plan with each of them and made some payment toward the account. She also consulted a credit counselor. It was only when AT & T refused to agree to a payment plan that she consulted an attorney and filed for bankruptcy protection in April 1996. All of this evidences to the Court that Ms. Reach made a good faith attempt for several months to deal with her debts before she resorted to bankruptcy. This is not a case where a debtor continues to incur charges while already turning an eye towards discharging them in bankruptcy.

Because AT & T failed to prove that Ms. Reach made a false representation when the cash advances were taken, either because she did not incur the debt in question herself or she did not at the time intend to breach her repayment obligations, the Court does not reach the sufficiency of the proof on the other elements under § 523(a)(2)(A). A judgment for Ms. Reach is due to be entered. Accordingly, it is hereby

ORDERED, ADJUDGED, AND DECREED that the relief sought by the Plaintiff, AT & T Universal Card Services Corporation, to declare certain indebtedness of the debtor/defendant Debbie Reach nondischargeable in accordance with 11 U.S.C. § 523(a)(2)(A) is **DENIED.** It is further

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the debtor/defendant Debbie Reach to AT & T Universal Card Services Corporation is **DISCHARGEABLE** and is included in the discharge of the Debtor entered in this case by order of this Court on October 21, 1996 and a **JUDGMENT** to that effect in favor of the debtor/defendant Debbie Reach will be entered contemporaneously herewith.

---

**2.** Those factors are: (1) the length of time between the charges made an the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; (6) whether the charges were above the credit limit of the account; (7) did the debtor make multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases were made for luxuries or necessities. *In re Dougherty*, 84 B.R. 653 (9th Cir. BAP 1988); *Mercantile Bank of Illinois v. Williamson (In re Williamson)*, 181 B.R. 403 (Bankr.W.D.Mo.1995); *FCC Nat'l Bank/First Card v. Friend (In re Friend)*, 156 B.R. 257 (Bankr.W.D.Mo.1993).