In re Glenn J. MELCHER and Lynette B. Melcher, Debtors.

Deborah Davis, Plaintiff,

v.

Glenn J. Melcher and Lynette B. Melcher, Defendants.

Bankruptcy No. 02–01803.
Adversary No. 02–10153.

United States Bankruptcy Court, District of Columbia.

March 10, 2005.

Madeline A. Trainor, Lead Attorney, Cyron & Miller LLP, Alexandria, VA, for Debtor.

Gregory P. Johnson, Lead Attorney, Orem & Johnson LLC, Greenbelt, MD, for Plaintiff.

*DECISION REGARDING DEFEN-
DANTS' REQUEST FOR ENTRY
OF ORDER FIXING COSTS*

S. MARTIN TEEL, JR., Bankruptcy Judge.

Before the court is the Defendants' Request for Entry of Order Fixing Costs (Docket Entry ("D.E.") No. 30, filed December 10, 2004). As noted in the Plaintiff's Opposition to Defendants' Request for Entry of Order Fixing Costs (D.E. No. 35, filed December 11, 2004), the defendants included a bill of costs as part of the motion and incorporated attorney's fees into the request for costs. Taxable costs do not include attorney's fees. However, § 523(d) of the Bankruptcy Code (11 U.S.C.) does authorize the recovery of attorney's fees in certain circumstances.

Section 523(d) applies only to claims pursued under 11 U.S.C. § 523(a)(2).[1] The plaintiff sought a determination that a debt owed to her was non-dischargeable pursuant to § 523(a)(2), and in the alternative § 523(a)(6). The defendants failed to invoke § 523(d), even after the plaintiff noted that the defendants' request invoked no statute that authorizes attorney's fees in this case. The plaintiff would thus be allowed to oppose any motion to amend the request to include § 523(d) as a basis for attorney's fees, and (if that motion were granted) to oppose such an amended request.

However, the court sees no reason to put the parties through those potential procedural hoops. Even if the court were to allow the request to be amended, an award of attorney's fees under § 523(d) would be inappropriate. The court will accordingly limit the defendants to taxable costs.

I

This case involved an allegation that the defendants, who were building a house adjacent to the plaintiff's, employed a contractor who obtained building permits through fraud (as he was unlicensed), and because of that fraud, engaged in construction activities that damaged the structural integrity of the plaintiff's home. The principal claim was of injury to the plaintiff's property, a claim that sounds more like a tort claim for which nondischargeability is usually pursued under § 523(a)(6) (a claim whose dismissal does not give rise to a right to seek recovery of attorney's fees under § 523(d)) instead of § 523(a)(2).

For this and other reasons, the facts of this case are not typical of cases brought under § 523(a). The court granted summary judgment in favor of the defendants, based on the absence of a debt for property obtained, the lack of proximate causation, and the lack of justifiable reliance. *Davis v. Melcher (In re Melcher)*, 319 B.R. 761 (Bankr.D.D.C.2004). The defendants then filed the motion that the court addresses here.

II

■ In order for the court to even decide whether fees can be recovered under § 523(d), a threshold matter must be determined. As far as the court can ascertain, the defendants did not request attorney's fees in the answer to the plaintiff's complaint, or in any other filings in this case. Courts are split on whether or not a debtor must specifically request attorney's fees in the answer to a plaintiff's complaint. Courts have recognized the conflict created by § 523(d) and Rule 7008(b) of the Federal Rules of Bankruptcy Procedure. Rule 7008(b) requires that "A request for Attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate." Section 523, on the other hand, simply instructs that the "court shall grant judgment in favor of the debtor for the costs of [attorney's fees]" and is silent on whether or not the defendants must request attorney's fees in the initial response to the plaintiff's complaint.

The court in *Commercial Union Insurance Co. v. Sidore (In re Sidore)*, 41 B.R. 206, 209 (Bankr.W.D.N.Y.1984), did not re-

---

**1.** 11 U.S.C. § 523(d) states in full:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs

of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

quire the debtor to specifically request attorney's fees at the outset in a § 523(a) case, reasoning that "[s]ince § 523(d) clearly states that the debtor is entitled to costs and reasonable attorney's fees, the creditor is on notice that loss of his claim could result in his being assessed those fees and costs." *See also, First Nat'l Bank v. Bernhardy (In re Bernhardy)*, 103 B.R. 198, 199 (Bankr.N.D.Ill.1989); *Thorp Credit, Inc. v. Smith (In re Smith)*, 54 B.R. 299, 303 (Bankr.S.D.Iowa 1985). *Compare Montgomery Ward and Co. v. Blackburn (In re Blackburn)*, 68 B.R. 870, 881 (Bankr.N.D.Ind.1987) (holding that the debtor must request attorney's fees in the answer to a complaint in a § 523(a) case). It is usually obvious whether a debt is a consumer debt, such as to put the creditor on notice that fees may be recoverable under § 523(d). Permitting such a creditor to escape § 523(d) on the technicality that a § 523(d) request for fees was not pled would confer a windfall on the creditor. Moreover, a court examines whether a creditor's conduct throughout the entire proceeding, not just the filing of the complaint, was "substantially justified." Accordingly, a request for fees under § 523(d) may not be warranted until only after an answer was filed. The court thus determines that failure to plead a request for fees in the answer ought not be fatal.

## III

A comprehensive explanation of the requirements of § 523(d) is found in *Phillips v. Napier (In re Napier)*, 205 B.R. 900, 908 (Bankr.N.D.Ill.1997), in which the court explained:

In order to prevail on a motion for attorney's fees, the Debtor must prove that: (1) the Creditor requested a determination of dischargeability; (2) the debt is a consumer debt; and (3) the debt was discharged. *See American Savs. Bank v. Harvey (In re Harvey)*, 172 B.R. 314,

317 (9th Cir. BAP 1994); *FCC Nat. Bank v. Dobbins*, 151 B.R. 509, 511 (W.D.Mo.1992); *Turning Stone Casino v. Vianese (In re Vianese)*, 195 B.R. 572, 576 (Bankr.N.D.N.Y.1995). Once the Debtor establishes these elements, the burden shifts to the Creditor to show that his actions were substantially justified. *Dobbins*, 151 B.R. at 511 (citing *Chrysler First Fin. Servs. Corp. v. Rhodes (In re Rhodes)*, 93 B.R. 622, 624 (Bankr.S.D.Ill.1988)). "Substantially justified" means more than frivolous, or undeserving of sanctions. *FCC Nat. Bank/First Card v. Friend (In re Friend)*, 156 B.R. 257, 262 (Bankr. W.D.Mo.1993). The requirements for substantial justification are: (1) a reasonable basis in law for the theory it propounds; (2) a reasonable basis in truth for the facts alleged; and (3) a reasonable connection between the facts alleged and the legal theory advanced. *America First Credit Union v. Shaw (In re Shaw)*, 114 B.R. 291, 295 (Bankr. D.Utah 1990); *Friend*, 156 B.R. at 262.... Moreover, an award of fees shall not be permitted if any special circumstances exist which would make the award unjust. *Dobbins*, 151 B.R. at 511 n. 3.

*Id.*

## A.

■ The court first addresses whether the debt the plaintiff alleged was incurred because of the damage to the plaintiff's property can be considered a "consumer debt." "Consumer debt" as defined in the Code "means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8) (previously numbered § 101(7)). Many courts have tried to make a determination in special situations whether or not certain debts are "consumer debts." *See In re*

*Booth,* 858 F.2d 1051, 1055 (5th Cir.1988) (the test is whether the debt was incurred "with an eye for profit"); *IRS v. Westberry (In re Westberry),* 215 F.3d 589, 591 (6th Cir.2000) (tax debt is not consumer debt because taxes are not incurred voluntarily, are imposed for a public purpose, and arise from the earning of money, not its consumption); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 913 (9th Cir.1988) (attorneys fees considered consumer debt); *Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796 (10th Cir.1999) (" 'Consumer debt' is further distinguished from 'non-consumer debt' as a debt incurred with a 'profit motive' ") *(citing Citizens Nat'l Bank v. Burns (In re Burns),* 894 F.2d 361, 363 (10th Cir.1990) (loans taken out to play the stock market were not consumer debt)); *American Express Travel Related Serv. v. Baker (In re Baker),* 206 B.R. 507 (Bankr.N.D.Ill.1997) (debt not consumer debt because it was primarily incurred for business purposes); *In re Pedigo,* 296 B.R. 485, 491 (Bankr.S.D.Ind.2003) (no "consumer debt" where improvements on home were to allow tenants to rent, thus supplementing debtor's income).

The quasi-tort aspect of the case suggests the alleged debt was not a consumer debt. The fraud claim the plaintiff pressed, although rejected by the court, was that the defendants tried to do a construction job "on the cheap," through false building permit applications, and by using an unlicensed contractor (who injured their neighbor's property), thus presenting an element of profit. If viewed that way, the debt would not ordinarily be thought of as a consumer debt. Moreover, the debt was proximately caused by the contractor's negligence, and such a debt, involving no element of volition, has been held, as in the case of taxes, not to be a consumer debt. *In re Marshalek,* 158 B.R. 704 (Bankr.N.D.Ohio 1993) (judgment for vehicular accident); *In re Alvarez,* 57

B.R. 65 (Bankr.S.D.Fla.1985) (same); *In re White,* 49 B.R. 869 (Bankr.W.D.N.C. 1985) (same). *But see In re Walton,* 69 B.R. 150 (E.D.Mo.1986), *aff'd,* 866 F.2d 981 (8th Cir.1989). On the other hand, the debt arguably could be characterized as incurred by the debtors incident to an effort to improve their own home for personal enjoyment and thus a consumer debt.

The court concludes that the alleged debt is not a consumer debt. The debt must be viewed from the perspective of the plaintiff's theory of a fraud debt which entailed a profit motive because the defendants engaged in fraud to perform construction on the cheap. That removes the debt from the category of debts incurred for household purposes. Moreover, the real cause of the plaintiff's injuries was the contractor's negligence, and like an automobile accident or taxes, such a debt is not incurred for a purpose. It may have been incurred incident to renovating a house (a household purpose) but negligence by definition is unintended and thus cannot be a debt incurred for a household purpose. In any event, any doubt as to whether the debt was a consumer debt is arguably relevant to the court's later consideration of the final factor of whether special circumstances make an award of fees inappropriate.

## B.

 The court further concludes that the plaintiff was substantially justified in bringing this case. The "substantially justified" and "special circumstances" exceptions of § 523(d) are derived from the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). *See Burns,* 894 F.2d at 362; *In re Hingson,* 954 F.2d 428, 429 (7th Cir.1992). Under EAJA, a position is substantially justified if it is "justified to a degree that could satisfy a rea-

sonable person" or, in other words, has "a reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). A position "can be justified even though it is not correct, and we believe it can be substantially justified if a reasonable person could think it correct." *Id.* at 566 n. 2, 108 S.Ct. 2541. In this regard, the court must endeavor not to evaluate the reasonableness of the plaintiff's claim based on hindsight. As our court of appeals recently observed with respect to EAJA:

> Although the strength of the government's position in the litigation obviously plays an important role in a substantial justification evaluation, the reasonableness inquiry "may not be collapsed into [an] antecedent evaluation of the merits, for EAJA sets out a distinct legal standard." *Cooper v. United States R.R. Ret. Bd.*, 24 F.3d 1414, 1416 (D.C.Cir. 1994) (internal quotation marks omitted). The statutory structure assumes that the government can lose on the merits and nevertheless be found to have taken a substantially justified position. *Underwood*, 487 U.S. at 569, 108 S.Ct. at 2552. *See De Allende v. Baker*, 891 F.2d 7, 12 (1st Cir.1989) ("The mere fact that the government lost in the underlying litigation does not create a presumption that its position was not substantially justified."). "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness," *Underwood*, 487 U.S. at 566, 108 S.Ct. at 2550, but at the same time the standard does not "require the Government to establish that its decision to litigate was based on a substantial probability of prevailing." *Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir.1983) (quoting H.R.Rep. No. 96–1418, at 10–11 (1980)[, U.S.Code Cong. & Admin.News 1980, 4984, 4988–

4990]). Here as in other areas courts need to guard against being "subtly influenced by the familiar shortcomings of hindsight judgment." *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964). *Cf. Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation"). Not all opinions can aspire to what was said of those of Justice Brandeis—that in them "the right doctrine emerges in heavenly glory and the wrong view is consigned to the lower circle of hell," HENRY J. FRIENDLY, Mr. Justice Brandeis—The Quest for Reason, in BENCHMARKS 291, 294 (1967)—but there is always the hope that, after decision, the "wrong view" looks considerably less plausible than it did before. But just as discovery of contraband does not establish probable cause, nor an accident negligence, nor poor returns an imprudent trustee, so too a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable.

Our EAJA jurisprudence reflects this principle. It "requires that the district court do more than explain, repeat, characterize, and describe the merits … decision." [Citing *Halverson v. Slater*, 206 F.3d 1205, 1209 (D.C.Cir.2000).] Courts evaluating substantial justification must instead analyze why the government's position failed in court: if, for example, the government lost because it vainly pressed a position "flatly at odds with the controlling case law," *Am. Wrecking Corp. v. Sec. of Labor*, 364 F.3d 321, 326–27 (D.C.Cir.2004) (internal

quotation marks omitted), that is one thing; quite another if the government lost because an unsettled question was resolved unfavorably. *See United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir.2000) ("the district court must reexamine the legal and factual circumstances of the case from a different perspective than that used at any other stage of the proceeding").

*Taucher v. Brown–Hruska*, 396 F.3d 1168, 1173–74 (D.C.Cir.2005). On the other hand, that a plaintiff's theory in support of its claim has never been advanced in a prior § 523(a)(2) proceeding does not make pursuit of the claim substantially justified if existing law made clear that the theory could not succeed. *See Halverson v. Slater*, 206 F.3d at 1210–12 (no substantial justification was present when court's rejection of novel position the government had advanced was based on the easily ascertainable plain meaning of the statute).

■ This adversary proceeding did not fit within the usual type of § 523(a)(2) complaint, a loan procured by fraud. Instead, it turned on a novel theory of liability for damages inflicted by a general contractor after submitting building permit applications falsely reciting that the contractor was licensed. Although that theory was ultimately rejected, the very novelty of the facts and the plaintiff's theory, and the fact that each of its elements had some plausibility, requires a finding that the plaintiff was substantially justified in pursuing the claim. *See Desert Palace, Inc. v. Baumblit (In re Baumblit)*, 251 B.R. 442 (E.D.N.Y.2000) ("novel facts presented in this case and the absence of legal authority directly rejecting the novel legal position presented by Caesars"), *aff'd*, 15 Fed.Appx. 30 (2d Cir.2001); *Parker v. Grant (In re Grant)*, 237 B.R. 97, 123 (Bankr.E.D.Va.1999) ("While obviously the Court does not agree with the plaintiffs that their evidence shows the existence of justifiable reliance ..., and found there was no proximate cause linking the damage alleged and the misrepresentation here, the Complaint nonetheless raised legitimate issues for consideration by the court in this regard and the positions taken by the plaintiffs cannot be labeled as substantially unjustified."). The court turns to the various elements of the plaintiff's theory.

First, the court assumed that the contractor's fraud (the deceitfully false statements in the building permit applications) could be imputed to the defendants as the general contractor was their agent. *Melcher*, 319 B.R. at 770–71. Agency principles arguably supported imputation of the contractor's false statements to the defendants. So as to that issue, the plaintiff proceeded with substantial justification.

Second, the court concluded that the defendants acquired no property by reason of the fraudulent statements. *Melcher*, 319 B.R. at 771–72. However, the plaintiff's theory was a novel one that the building of the house, without the general contractor being licensed, permitted the defendants to obtain property, a renovated house, that they would have been unable to acquire using this contractor had the building permit applications not been false. This presented a previously untested legal theory, however far-fetched the defendants might characterize it, for being permitted to proceed under § 523(a)(2). Moreover, the obtaining of the permit itself presented an issue of whether the permit (designed to protect the public) could constitute the obtaining of property within the meaning of § 523(a)(2).

Third, the court dismissed the § 523(a)(2) claim on the alternative basis that even if property was obtained by the defendants, the plaintiff failed to show that the contractor's fraud was the proximate

cause of the plaintiff's injuries. However, this is a frequently overlooked aspect of § 523(a)(2), as is evidenced by the failure of the defendants to raise it as a defense, and the fraud claim had survived a motion to dismiss in the Superior Court of the District of Columbia even though proximate causation was a necessary element of the claim when asserted in that forum. Moreover, the plaintiff could look to support for her claim based on those cases addressing a debtor who falsely represents that he holds a professional license and induces a creditor to enter into a contract for the debtor to provide professional services, and decisions dealing with lack of privity and protected classes. *Melcher,* 319 B.R. at 775. Although this court determined that such arguments should be rejected, they were obviously arguments of some weight based on the lengths to which the court went in addressing them.

Finally, the court found that there was no justifiable reliance by the plaintiff. However, the plaintiff pointed to *Orthopedic Bone Screw Products Litigation* in support of there being justifiable reliance, and this court distinguished that decision as a matter of degree of the directness of the relationship of the injury to the misrepresentation, not as a totally erroneous legal argument. *Melcher,* 319 B.R. at 776.

## C.

■ In addition, the court concludes that special circumstances would make the application of § 523(d) unjust. As noted by *Wilkett v. ICC,* 844 F.2d 867, 873 (D.C.Cir.1988), in interpreting the "special circumstances" language in EAJA:

The legislative history of the provision indicates that this "safety valve" was designed to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts" and to permit courts to rely on "equitable considerations" in denying a fee award. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 U.S.Code Cong. & Admin. News 4953, 4984, 4990.

The plaintiff here satisfies at least the first if not both tests for "special circumstances."

### 1.

■ When a party relies on the novelty exception identified in the legislative history, "special circumstances" exist only if the party "advocated not only a novel but also a 'credible' extension of existing law." *Wilkett,* 844 F.2d at 873. As explained in *Russell v. National Mediation Board,* 775 F.2d 1284, 1290 (5th Cir.1985), the special circumstances exception "preserves government efforts to present creative legal interpretations, which though not yet commonly accepted, still merit the court's careful examination" (citation and internal quotations omitted). Because the "special circumstances" provision was intended as a "safety valve" for a litigant who is unable to meet the "substantially justified" test, the term "credible" must mean something less than "substantially justified."[2] Here, the court has already determined that the plaintiff's claim was substantially justified. Even if it could not

---

**2.** *See Keasler v. United States,* 585 F.Supp. 825, 841 (E.D.Ark.1984), *aff'd,* 766 F.2d 1227 (8th Cir.1985) ("even where a court's rejection of a novel legal argument suggests that the Government's position was not 'substantially justified' the advancement of a novel legal argument might justify invocation of the 'special circumstances' exception to fees liability"). *But see Traveler Trading Co. v. United States,* 713 F.Supp. 409, 413 (Ct. Int. Trade 1989) (treating determination that the government's position was not substantially justified as answering whether there was a novel but credible position).

be characterized as substantially justified, her novel attempt to extend existing law to novel facts was credible. It bears emphasizing that she had a solid basis for contending that the contractor's false statements, made with an apparent intent to deceive the governmental entity that issues building permits, should be imputed to the defendants. On the other issues she had plausible arguments, albeit arguments ultimately rejected by the court. Unlike *Wilkett*, 844 F.2d at 873, the court did not reject the plaintiff's arguments as flatly unreasonable.

2.

A court's ability to find "special circumstances" based on "equitable principles" is limited to traditional equitable principles and is not "a license to the bankruptcy judge to base decision on idiosyncratic notions of equity, fair dealing, or ... family justice." *In re Hingson*, 954 F.2d 428, 429 (7th Cir.1992).

This adversary proceeding was a squabble between neighbors, not the typical § 523(a)(2) fight between a lender and a debtor-borrower. However, under *Hingson*, which held that a intra-family dispute was not a special circumstance, treating a neighbors' squabble as a special circumstance based on its settling a score is inappropriate.

The parties appear to have had similar incomes, and this is not a case of a well funded lender who pursues a § 523(a)(2) claim against an impecunious debtor. In *Pisano v. Verdon (In re Verdon)*, 95 B.R. 877, 886 (Bankr.N.D.N.Y. 1989), the court explained that the purpose of the statute was to " 'level the playing field' between unequally positioned litigants so as to deter abuse of the bankruptcy laws and its spirit." *See also, Walter v. Walter (In re Walter)*, 50 B.R. 521 (Bankr. D.Del.1985) (equally positioned private parties was a special circumstance). Those decisions are questionable. *See Grason Electric Co. v. NLRB*, 951 F.2d 1100, 1103–05 (9th Cir.1991) (noting that EAJA's legislative history nowhere mentions financial circumstances as a "special circumstance" to defeat an award to a prevailing party, considerations of net worth go to the definition of eligible party). Moreover, unlike EAJA, § 523(d) does not include any net worth or other financial limitation on a debtor's eligibility to seek fees under the statute. While one of the rationales of § 523(d) is to permit a debtor to litigate without being deterred by the financial costs, "that is [not] the statute's only animating purpose. There is also a significant concern with deterring the unjustified action in the first place." *Caremore, Inc. v. NLRB*, 150 F.3d 628, 630 n. 2 (6th Cir.1998) (construing EAJA). *Cf. Carthage Bank v. Kirkland*, 121 B.R. 496, 502–503 (S.D.Miss.1990) (ability to repay analysis under 11 U.S.C. § 707(b) is irrelevant to an inquiry under § 523(d)).[3] The

3. This is not a case of a party other than the debtor having been willing to undertake the litigation on behalf of the debtor without charge to the debtor. *See In United States v. 27.09 Acres of Land in Town of Harrison*, 43 F.3d 769, 775 (2d Cir.1994) (holding, under special circumstances exception, that "where one or more ineligible parties are willing and able to pursue the litigation against the United States, the parties eligible for EAJA fees should not be able to take a free ride through the judicial process at the government's expense.") (internal quotation marks and citation omitted). However, "special circumstances" need not be invoked to deny an award in such an instance because the debtor has not incurred the fees. *See Unification Church v. INS*, 762 F.2d 1077, 1081–1082 (D.C.Cir.1985) (treating party responsible for paying fees as "real party in interest" with respect to fees). *But see Nail v. Martinez*, 391 F.3d 678 (5th Cir.2004) (rejecting *Unification Church* ).

court thus concludes that the relatively equal footing of the parties, if indeed such existed, is not a special circumstance warranting not awarding attorney's fees.

Nevertheless, there are obvious instances in which special circumstances do exist under traditional equitable principles. *See Oguachuba v. INS,* 706 F.2d 93, 98–99 (2nd Cir.1983) (unclean hands recognized as special circumstance); *U.S. Dep't of Labor v. Rapid Robert's, Inc.,* 130 F.3d 345, 346–47 (8th Cir.1998) (special circumstances existed because district court had remitted fines far beyond those attributable to invalidated regulation and thus had permitted a corporation to "reap[ ] a windfall by escaping its duty to pay for clear violations of a valid statute."); *Lion Raisins, Inc. v. United States,* 57 Fed.Cl. 505 (2003) ("EAJA allows a reviewing court to prevent a prevailing party from profiting on a legal technicality").

■ One equitable principle arguably applicable here is that of a lack of fair notice. From the plaintiff's perspective she did not view the defendants' conduct as incurring debt for personal household purposes, such as to make this a "consumer debt," but as the infliction of injury on her for the defendants' financial gain. That she would reasonably not have viewed § 523(d) as being applicable, particularly when the defendants failed to invoke § 523(d) in their answer, is arguably a special circumstance which warrants not imposing the sanction of attorney's fees against her. *Cf. United States v. Norton,* 717 F.2d 767, 774–75 (3d Cir.1983) (contempt sanctions for violation of the automatic stay were inappropriate because the statute was ambiguous and did not give fair warning that its act violated the automatic stay). Nevertheless, the court

adopts a contrary analysis. Either a debt is a "consumer debt" entitling a debtor to invoke § 523(d) or it is not. If it is determined to be a consumer debt, but it was a close call, nevertheless the statute plainly treats that as a gateway determination which authorizes an award of attorney's fees if the other conditions of § 523(d) are met. *Norton* is distinguishable because the ambiguity there went to what conduct the automatic stay proscribed, not doubt regarding the gateway inquiry of whether the automatic stay had arisen.[4]

■ This proceeding additionally included a count under § 523(a)(6), a claim to which § 523(d) is inapplicable, and the plaintiff did not violate F.R. Bankr.P. 9011 in pursuing that claim. Accordingly, a special circumstance making an award of fees unjust does exist to the extent that non-recoverable fees would have been incurred in battling the § 523(a)(6) even had the § 523(a)(2) count not been asserted. *See Middlefield Banking Co. v. Kassoff (In re Kassoff),* 146 B.R. 194, 201 (Bankr. N.D.Ohio 1992).

### IV

■ The defendants seek $85.76 in costs, but $20.00 of that represents a Federal Express charge. Because such a charge is not among the expenses enumerated in 28 U.S.C. § 1920, it is not a taxable cost. The plaintiff does not contest the defendants' entitlement to recover the remaining $65.76 in costs.

### V

An order follows.

---

4. Analogously to *Norton,* under § 523(d) uncertainty as to the underlying merits of whether the debt was dischargeable *is* relevant because it affects whether the creditor's position was substantially justified.