In re Clayton Earl SHURBIER & Wanda Lee Shurbier, Debtors.

BENEFICIAL OF MISSOURI, INC., Plaintiff,

v.

Clayton Earl SHURBIER & Wanda Lee Shurbier, Defendants.

Bankruptcy No. 91–20349–C.
Adv. No. 91–2033–C.

United States Bankruptcy Court, W.D. Missouri, C.D.

Dec. 31, 1991.

**924**

Gwendolyn Froeschner, Columbia, Mo., for debtors/defendants.

Norman W. Lampton, Columbia, Mo., for plaintiff.

## MEMORANDUM OPINION

### FRANK W. KOGER, Chief Judge.

This is an adversary complaint filed by Beneficial of Missouri, Inc., ("Beneficial") a finance company, challenging the dischargeability of a loan made by Beneficial to Debtors. Plaintiff claims the debt is nondischargeable pursuant to either §§ 523(a)(2)(A) or 523(a)(2)(C) of the Bankruptcy Code. The Court will decide this case on the pleadings and a set of stipulated facts as there is no dispute as to the material facts.

FACTS

The following facts were stipulated to by the parties:

1. In March of 1991, Beneficial mailed Debtors a check in the amount of $1,547.09.

2. Debtors did not apply for a loan from Beneficial nor did they request the check in any way.

3. Debtors were not required to submit any financial statement in order to accept the loan.

4. A loan agreement appears on the back of the check calling for a total of payments of $2268 with the loan payable over a 36 month period and monthly payments of $63.00.[1]

5. Above the lines upon which the payees of the check are to endorse, there is a statement to the effect that signing the check constitutes an acceptance of the loan agreement printed on the back of the check as well as acceptance of a supplemental loan agreement.

6. The first payment due on the loan was to be on April 14, 1991.

7. The parties agree that March 14, 1991, is the date upon which this loan was made to the Debtors.

8. On March 14, 1991, Debtor's monthly take home pay was $2,056.88.

9. On March 14, 1991, Debtor's monthly expenditures, excluding unsecured debts, were $2,301.00.

10. On March 14, 1991, Debtors had the following unsecured debts totaling $6,996.26, each of which required monthly payments:

| | | |
|---|---|---|
| Avco Financial Services | $2,121.00 | incurred 2–91 |
| Citibank Visa | $ 463.37 | |
| Mizzou Credit Union | $3,000.00 | incurred 1981 |
| Mizzou Credit Union | $ 600.00 | incurred 10–90 |
| Montgomery Wards | $ 811.89 | incurred 11–90 |

11. During the two month period from February 7, 1991 to April 8, 1991, Debtors made one payment each to Avco, Montgomery Wards, and Visa, and made no other payments on unsecured debt.

12. Debtors consulted counsel on April 4, 1991 and filed a voluntary bankruptcy petition on April 14, 1991.

13. Debtors made no payment on the Beneficial loan.

14. The parties agree that the loan proceeds were used as follows:

$500 for a paint job on Debtor's pickup truck

$200 to transport Debtor's mother to Illinois due to her illness

$250 to transport Debtor's mother back to Missouri due to same illness

$350 for trip to Iowa to attend the funeral of Debtor's grandmother

The balance ($247.09) was used to defray living expenses

15. During the period from March 6, 1991, to April 8, 1991, Debtor's son was incarcerated in the Juvenile Justice Center and Debtors were required to pay a per-diem charge for his care as well as incur travel expenses in order to visit him.

---

**1.** By the Court's calculations, the interest rate on the loan is 26.81%.

16. Mr. Shurbier's work schedule called for him to work 4 days on duty followed by 4 days off and then 3 days on followed by 3 days off. He indicated that when he cashed the Beneficial check he intended to ask for more overtime on his days off, but that his family situation, because of his son and his mother, became so bad he did not feel he could do that.

17. Over a 12 to 13 year period, Debtors had other loans with Beneficial which they paid in full.

## DISCUSSION

*a. Nondischargeability Under § 523(a)(2)(A)*

Section 523(a)(2)(A) reads as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

.    .    .    .    .

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A) (1988).

In light of the statute and the above stipulated facts, the issue before the court is whether a debtor has obtained money by false pretenses, a false representation, or actual fraud when he negotiates a check, representing loan proceeds, sent to him by a loan company without any solicitation or agreement and in so doing agrees to repayment terms for the loan even though he made no application or request for the loan whatever.

■ The following elements are required in order for the plaintiff to make a case for dischargeability under § 523(a)(2)(A):

(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Thul v. Ophaug (In re Ophaug),* 827 F.2d 340, 342 n. 1 (8th Cir.1987).

■ Plaintiff's case relies upon an analogy between this case and the credit card cases. In dischargeability cases involving the use of credit cards by debtors who had no ability to repay their debt at the time they made their charge purchases, courts have found that the act of using the credit card constituted an implied representation of intent to repay the debt. *See e.g. Citicorp Credit Services, Inc. v. Hinman (In re Hinman),* 120 B.R. 1018, 1021 (Bankr. D.N.D.1990). Plaintiff asks this Court to find the same implied representation in Debtor's act of negotiating the unsolicited loan check.

But assuming that the Court could find a representation analogous to the implied representation found in the credit card cases, the hurdle Plaintiff cannot get over is that of reliance.[2] Plaintiff must prove that it relied upon Debtor's representation. But Beneficial wrote the loan check to Debtors on March 6, 1991. Debtor's alleged misrepresentation occurred on March 14, 1991 when they negotiated the check. Absent proof of Beneficial's clairvoyant abilities, this Court is hard pressed to find that Beneficial relied upon a representation which occurred subsequent in time to Beneficial's action of issuing the check.

Plaintiff's dependence on analogy to the credit card cases disintegrates completely

---

2. The Court notes that Plaintiff's brief, which includes lengthy arguments as to most of the elements necessary to its case, devotes only the following two sentences to the element of reliance: "That the creditor relied on the representation is part and parcel of the transaction. The creditor expectation to be paid is clear on the four corners of the transaction." The obviousness of the reliance in this transaction is considerably less clear to the Court than it apparently is to Plaintiff.

at the reliance element. Reliance may be part and parcel to the ongoing relationship between the credit card issuer and the credit card user in that type of open-ended credit arrangement. But a loan is a discrete transaction. Even though Debtors had taken out and paid off other small loans from Beneficial in the past, nothing in their conduct in connection with those loans can be construed as a representation that they would repay any future unsolicited loans from Beneficial.

In order to find a debt nondischargeable by reason of fraud, all of the elements of fraud must be proved. *See Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 (8th Cir.1987); *United States v. Stelweck*, 108 B.R. 488, 493 (E.D.Penn.1989); *FSLIC v. Musacchio*, 695 F.Supp. 1053, 1070 (N.D.Cal.1988). Plaintiff has failed to convince the Court that Beneficial relied upon any representation by Debtors when it acted to issue the subject loan check. Since reliance is a necessary element to a finding of fraud, the Court finds that § 523(a)(2)(A) does not operate to make the subject loan debt nondischargeable.

█ Nothing in this opinion should be construed to condone Debtor's action of cashing the loan check at a point in time when it appeared that there was little or no likelihood of them being able to repay the loan. The Court notes that Debtors consulted counsel with regard to their financial condition just three weeks after cashing the loan check. It is difficult to believe that at the time of taking the loan, Debtors were not at least contemplating bankruptcy relief. Nonetheless, exceptions to discharge are construed strictly in order to further an important underlying goal of the Code—rehabilitation of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Transouth Financial Corp. v. Johnson*, 931 F.2d 1505, 1509 (11th Cir.1991). This Court will not torture the elements of fraud to find reliance where it does not in fact exist.

b. *Nondischargeability under § 523(a)(2)(C)*

█ Section 523(a)(2)(C) relates back to § 523(a)(2)(A) and provides what in essence is a presumption of fraud when the Debtor incurs a debt for the purpose of acquiring "luxury goods or services" within 40 days of petitioning for relief under the Bankruptcy Code, or cash advances "aggregating more than $1,000.00 ... under an open end credit plan ... within 20 days of filing". Section 523(a)(2)(C) reads in pertinent part:

> for purposes of [§ 523(a)(2)(A)], consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance or the debtor or a dependent of the debtor;....

11 U.S.C. § 523(a)(2)(C) (1988). As an alternative ground for relief, Plaintiff argues that to the extent that the loan proceeds were expended for luxury goods or services the debt on the loan is nondischargeable.

Plaintiff is trying to fit a square peg into a round hole. If this transaction applies to this subsection at all, it has to apply to the provision relating to cash advances. This is one time cash loan, not indebtedness for goods or services. Of course, the portion of the loan which Plaintiff questions is less than $1000 and the loan was obtained more than 20 days before Debtors filed their petition, good reasons to not allege that portion of § 523(a)(2)(C). Nevertheless, this is not an open-ended credit plan, so there can be no question that the portion of § 523(a)(2)(C) relating to cash advances does not apply. But Plaintiff's attempt to characterize a cash loan as indebtedness for goods or services is no more availing nor appealing.

Plaintiff has raised no question with regard to money spent to attend the funeral

of Debtor's grandmother or to transport Debtor's mother to deal with her illness. That leaves only the $500.00 listed as being spent on a paint job for Debtor's pick-up truck, and the $247.09 balance listed as being spent on living expenses.

■ There is no evidence before the court to suggest that the $247.09 was spent on anything but the living expenses as stipulated to by the parties.[3] As for the $500 spent to paint the truck, first it must be pointed out that the statute requires debts for "luxury goods and services" to aggregate *"more than* 500," 11 U.S.C. § 523(a)(2)(C) (1988), and the truck painting expenditure is listed at exactly $500.00. As if that fact is not fatal enough to Plaintiff's claim, there is also the problem that indebtedness on a cash loan simply is not a debt for goods and services. *Aetna Finance Co. v. Neal (In re Neal),* 113 B.R. 607, 609–10 (9th Cir. BAP 1990) (§ 523(a)(2)(C) does not apply to unrestricted loans of cash). Moreover, it is evident that the $500.00 recited in the stipulated facts was not used to acquire the paint job for the truck but to make a payment on previously incurred indebtedness. The Debtor's check register submitted with the parties stipulated facts shows a $200 payment to "Auto Shop" for the paint job on the pickup truck dated February 21, 1991. That payment was made three weeks before the date of the Beneficial loan. Therefore, even if the painting of Debtor's truck qualified under the statute otherwise, the subject debt was not incurred for that service. Debtor did no more than substitute one creditor for another one. *Cf. ITT Financial Services v. Woods (In re Woods),* 66 B.R. 984, 989 (Bankr.E.D.Pa.1986); *Thorp Credit, Inc. v. Smith (In re Smith),* 54 B.R. 299, 302 (Bankr.S.D.Iowa 1985). Additionally, that $200.00 check for the paint job was written more than 40 days before Debtor's received the Beneficial loan. Consequently, It appears that the paint job was acquired more than 40 days before the loan, so the presumption of nondischargeability in § 523(a)(2)(C) is inapplicable to that transaction in any case.

## ATTORNEY FEES

Debtor's attorney has asked the court for an award of attorney fees under § 523(d). Section 523(d) reads:

If a creditor requests a determination of dischargeability of a consumer debt under [§ 523(a)(2) ], and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified. except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d) (1988).

■ The section was enacted to prevent a creditor from bringing dischargeability actions in order to coerce a settlement from an honest debtor anxious to avoid large attorney fees. H.Rep. No. 595, 95 Cong., 1st Sess., 131 (1977), U.S.Code Cong. & Admin.News, 1978, p. 5787. Five elements must be satisfied in order for a debtor to prevail on a motion for attorney fees under § 523(d): (1) the creditor must bring a dischargeability complaint under § 523(a)(2); (2) the complaint must concern a consumer debt; (3) the debt must be found to be dischargeable; (4) the court must find that the creditor's complaint was not substantially justified; and (5) there must be no "special circumstances" which would make an award of attorney fees unjust. 11 U.S.C. § 523(d) (1988). The element which causes the courts the most trouble is determining whether the complaint was "substantially justified". This Court believes that the proper test for this element is whether the "complaint had a reasonable basis in both law and in fact." *First Chicago FCC National Bank v. Willett (In re*

---

**3.** Plaintiff does point out that Debtor spent money on such things as bar tabs and the Olin Mills Picture Club. However, the evidence for these expenses is Debtor's check register submitted with the stipulated facts, and the Court notes that the proceeds from the beneficial loan were not deposited into that checking account. Therefore entries on the check register are irrelevant as proof of how the loan proceeds were spent.

*Willett)*, 125 B.R. 607, 609 (Bankr.S.D.Cal. 1991); *see Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2549-51, 101 L.Ed.2d 490 (1988) (interpreting the term "substantially justified" as used in 28 U.S.C. § 2412(d)(1)(A)).

The first three elements above are certainly satisfied because Beneficial did bring a dischargeability action under §§ 523(a)(2)(A) and 523(a)(2)(C); the debt was incurred for personal and family purposes; and this Court finds the debt to be dischargeable. That leaves just two questions to be answered by this Court (1) whether a lender has a reasonable basis in law or fact to bring a complaint based in fraud that alleges the lender's reliance on a statement made by the debtor after granting of the subject loan; and (2) whether "special circumstances" exist that make an award of attorney fees unjust.

██ This Court finds that Beneficial's complaint was brought without reasonable basis in law or in fact. Some courts have stated that as long as the plaintiff is able to prove a major element of its case, it is entitled to rely on the possibility that the court will find in its favor on the other elements. *See e.g. Citizens National Bank v. Burns (In re Burns)*, 77 B.R. 822, 823 (D.Colo.1987). But a standard such as that still allows plaintiffs to bring cases which are not substantially justified. In this Court's view, a more helpful reading of the statute would impose attorney fees on the plaintiff whenever the court finds that the plaintiff proceeded with its case past a point where Plaintiff knew or should have known that it could not carry its burden of proof. *See Manufacturer's Hanover v. Hudgins*, 72 B.R. 214, 220-21 (N.D.Ill. 1987). Where a plaintiff proceeds to prosecute a case knowing that it cannot provide proof of an element that is necessary in order for them to prevail, then they have wasted the court's time and the debtor's resources without just cause. In such a situation, the statute requires the plaintiff to compensate the court and the debtor.

██ In the present case, Plaintiff must have understood the metaphysical impossibility of proving reliance on a statement by Debtor which occurred subsequent in time to the granting of the loan by Plaintiff. There is no ambiguity in the case law of the 8th Circuit concerning the fact that reliance must be proved in order to make a case under § 523(a)(2)(A). *See Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n. 1 (8th Cir.1987). Thus Plaintiff must have known or certainly should have known the impossibility of making a case for fraud at the outset.

As to Plaintiff's argument under § 523(a)(2)(C), as pointed out above, in virtually no sense, are the facts of this case applicable to that subsection.

██ While Plaintiff's complaint may not be frivolous in the sense that Plaintiff should be subject to sanctions, it must be noted that frivolousness is not the standard in determining whether an action is substantially justified. *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) ("'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness"). But while not frivolous, Plaintiff's complaint certainly does not rise to the level of having a reasonable basis. Where undisputed facts do not fall within the parameters of the statute, the complaint cannot have a reasonable basis in law or in fact. Therefore, Plaintiff's complaint is not substantially justified. Nor does the Court find "special circumstances" that would make it unjust to impose costs and attorney fees upon Plaintiff.

## CONCLUSION

In view of the foregoing discussion, Plaintiff's complaint to determine Debtor's loan to be nondischargeable under §§ 523(a)(2)(A) or 523(a)(2)(C) is hereby DENIED. Debtors motion to tax costs against the Plaintiff and award attorney fees is hereby GRANTED. Plaintiff is to pay all cost of this action and Judgement is entered against Plaintiff in the amount of $500.00 as attorney fees for Debtor's attorney.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions

of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.