**In re Larry Allen HOLMES, Debtor.**

**BOATMEN'S BANK—DELAWARE, Plaintiff,**

v.

**Larry Allen HOLMES, Defendant.**

**Bankruptcy No. 93–50463.
Adv. No. 94–5005.**

United States Bankruptcy Court,
W.D. Missouri.

May 19, 1994.

---

**188**

Mark J. Schultz, Gallas & Schultz, Kansas City, MO, for plaintiff.

Edward A. Coulson, Duncan, Coulson, Schloss, Chancellor & Norris, Kansas City, MO, for defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

A trial to determine the dischargeability of a credit card debt was held on April 21, 1994. At the conclusion of the hearing, I announced that the debt was dischargeable and awarded debtor attorney's fees and costs pursuant to 11 U.S.C. § 523(d). The following shall constitute the Court's Findings of Fact and Conclusion of Law pursuant to Federal Rule of Civil Procedure 52 as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. To the extent that my Findings of Fact and Conclusions of Law expressed in this Memorandum Opinion differ from those announced at the conclusion of the trial, this Memorandum Opinion controls. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons announced at the hearing and set forth below, I find that the debt for $3,114.17 is dischargeable.

### FACTUAL BACKGROUND

Debtor/defendant ("debtor") applied for a credit card from Boatmen's Bank—Delaware ("Boatmen's") on December 20, 1992. He listed his gross monthly income as $2100.00. The application did not ask for a listing of assets and liabilities. Debtor testified that he filled out the application for a credit card in order to obtain a free catalog from The Bass Pro Shop. The charge card, with a $3,000.00 limit, was sent to debtor some time in January 1992. No charges were made on the card until February 4, 1993. Between February 4, 1993, and August 13, 1993, debtor made thirteen charges totalling approximately $689.00 on the credit card.[1] He also withdrew $2,450.00 in nine cash advances and made six payments totalling $326.00. Debtor filed for bankruptcy on September 8, 1993.

---

1. Of these thirteen charges, three were for credit life insurance premiums. The account was also assessed a $20.00 membership fee and a $10.00 late fee during this period.

The bankruptcy schedules list current income of $1,728.37, current expenses of $2,210.00, and unsecured debt of $14,768.87. Debtor's marriage was dissolved on June 19, 1992, and he pays $800.00 a month in child support. He first contacted an attorney regarding debt counseling on August 19, 1993, when he realized he could no longer service his credit card debt, pay his rent, and remain current on his child support.

Boatmen's claims that its debt for $3,114.17 should be excepted from discharge pursuant to 11 U.S.C. 523(a)(2)(A).

### DISCUSSION

■ Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt.

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). In determining whether a particular debt falls within one of the dischargeability exceptions in section 523(a)(2)(A), the statute should be construed strictly against the objecting creditor and liberally in favor of the debtor. 3 Lawrence P. King et al., *Collier on Bankruptcy*, ¶ 523.-05A, at 523–19 (15th ed. 1994) (citations omitted); *see Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987) ("[A]ny evidence presented must be viewed consistent with the congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code."). In order to succeed under section 523(a), the objecting party must prove each element of a particular section 523(a) discharge exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Boatmen's claims that debtor obtained a credit card with a $3,000.00

limit by false pretenses, false representation, or actual fraud. Further, Boatmen's claims that debtor used the credit card to buy luxury goods and obtain cash advances within twenty-five days of the bankruptcy filing. Finally, Boatmen's claims that debtor represented he would be able to pay for all of the purchases made on the credit card at a time when he knew he was unable to meet his financial obligations. No evidence was presented to prove debtor made any false representation when he applied for the card. He accurately listed his income at $2,100.00 a month. Mr. Holmes even testified that he underrepresented his income at the time because he was aware of a ten percent decrease in his salary commencing in April 1993. He also testified he was paying all his bills at the time he applied for the credit card. The application did not ask debtor to list any other liabilities. I find that no false representations were made in the credit application.

■ The Bankruptcy Code (the "Code") provides that debts incurred for luxury consumer goods or services totalling more than $500.00 within forty days of the petition, or cash advances totalling $1,000.00 within twenty days of the petition, are presumed nondischargeable. 11 U.S.C. § 523(a)(2)(C). To the extent Boatmen's relied on said provision of the Code, that reliance is misplaced. The only purchases that could conceivably be considered luxury goods obtained within forty days of the bankruptcy filing were two pairs of boots which cost $45.75 and $53.23, respectively. Debtor testified he bought one pair of boots for work and one pair for leisure wear. Further, debtor made two cash advances on August 13, 1993, totalling $500.00. There is no presumption of nondischargeability for cash advances within twenty-five days of bankruptcy, nor did the cash advances total $1000.00. Therefore, Boatmen's must prove that debtor fraudulently misrepresented his ability to pay the debts incurred.

To establish fraud under section 523(a)(2)(A), the following five elements must be proved:

(1) that the debtor made representations;

(2) that at the time the representations were made the debtor knew them to be false;

(3) that the debtor made the representations with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on the representations; and

(5) that the creditor sustained the alleged injury as a proximate result of the representations.

*Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n. 1 (8th Cir.1987); *Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (Bankr.E.D.Cal.1988) *on remand*, 89 B.R. 840 (Bankr.E.D.Cal.1988); *FCC Nat'l Bank v. Bartlett (In re Bartlett)*, 128 B.R. 775, 779 (Bankr.W.D.Mo.1991); *Citicorp Credit Serv. v. Hinman (In re Hinman)*, 120 B.R. 1018, 1021 (Bankr.D.N.D. 1990).

■ With respect to the first element, credit card use carries the representation that the buyer has the intention of repaying the charge. *Bartlett*, 128 B.R. at 779; *Hinman*, 120 B.R. at 1021; *see also Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 727 (Bankr.N.D.Ga.1985) (noting that this is the majority view). Therefore, that element is met.

■ The second element requires plaintiff to prove that debtor made a false representation as to his intent to repay the debt. Nothing in the testimony of debtor indicates he knowingly made a false representation about his intent to repay the debt. He did not use the card immediately, and over the course of the seven months at issue here, Mr. Holmes made six payments to Boatmen's. On July 11, 1993, debtor was informed that his account was past due. On July 12, 1993, he made a payment of $55.00, and on July 26, 1993, he made a payment of $120.00. Debtor was then informed on September 11, 1993, that his account was past due, and that his credit limit had been exceeded. Boatmen's then stated, "If you need a higher limit simply call us at 1–800–426–6420." Debtors testified he realized the seriousness of his financial condition in August of 1993, and he sought debt counseling. He never used the

credit card after August 13, 1993. He went to see his attorney on August 19, 1993. Debtor testified that prior to that time he believed that he would be able to pay his obligations, and, in fact, had paid his obligations.

■ Direct proof of an individual's intention and purpose is nearly impossible to find. Therefore, case law has developed a list of objective or circumstantial factors which a creditor might use to infer intent. *See In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987); *In re Blackburn*, 68 B.R. 870, 879 (Bankr.N.D.Ind.1987). These objective or circumstantial factors, much like the "badges of fraud," are:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made;

6. Whether the charges were above the credit limit of the account;

7. Did the debtor make multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. The debtor's financial sophistication;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*Sears, Roebuck, and Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 757 (Bankr.N.D.Ind. 1986); *Blackburn*, 68 B.R. at 880; *Chase Manhattan Bank v. Carpenter (In re Carpenter)*, 53 B.R. 724, 730 (Bankr.N.D.Ga. 1985). With the exception of the fact that debtor made two cash advances on August 13, 1993, and purchased two pairs of boots on August 8, 1993, Boatmen's proved none of the objective factors which give rise to an

inference of fraudulent intent. More than twenty-five days elapsed between the last charge and the filing of the bankruptcy petition. Debtor did not consult an attorney about filing bankruptcy until after the last charge. Debtor made only thirteen charges on the account over a period of seven months. The cash advances were used for rent and child support, not for the purchase of luxury goods. Debtor is, and has been, gainfully employed. He testified that prior to his divorce, his wife paid all the bills, thus he was not experienced in budgeting and keeping track of expenses. Debtor exceeded his credit limit on the card only as a result of interest and penalty charges. He never used the card after the limit was exceeded. Rather than instruct debtor not to use the card once the credit limit was exceeded, Boatmen's offered to extend the limit at debtor's request. Boatmen's never demonstrated a sudden change in debtor's buying habits. And, plaintiff failed to prove any of the purchases were for luxury goods or services. In fact, debtor testified that he used the cash advances to pay rent and child support. Thus, plaintiff has not proven the second element necessary for fraud, namely that debtor did not intend to repay Boatmen's at the time the charges were incurred. I need not reach the last three elements, for if debtor did not knowingly make a false representation, he could not have intended to deceive plaintiff, nor could plaintiff have relied upon the false representation to its detriment.

For all those reasons, debtor's obligation to plaintiff is dischargeable.

■ I turn now to the issue of attorneys' fees. Debtor's counsel has now submitted a statement for fees of $660.00 incurred in defending this action. Plaintiff has not challenged the reasonableness of such fees.

■ While the Bankruptcy Code excepted certain debts from discharge in section 523(a)(2), Congress enacted section 523(d) to "discourage creditors from initiating proceedings to obtain a false financial statement exception to discharge in hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees." S.Rep. No. 989, 95th Cong.2d Sess. 80 (1978), 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5866. Section 523(d) provides:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. 523(d). In order for the debtor to prevail on a motion for attorney's fees under section 523(d), five elements must be satisfied: (1) the creditor must bring a dischargeability complaint under section 523(a)(2); (2) the complaint must concern a consumer debt; (3) the debt must be found to be dischargeable; (4) the court must find that the creditor's complaint was not substantially justified; and (5) there must be no special circumstances which would make the award of attorney's fees unjust. *Beneficial of Missouri, Inc. v. Shurbier (In re Shurbier)*, 134 B.R. 922, 927 (Bankr.W.D.Mo.1991). *See also Manufacturers Hanover Trust Co. v. Cordova (In re Cordova)*, 153 B.R. 352 (Bankr.M.D.Fla.1993). *Chevy Chase, F.S.B. v. Kullgren (In re Kullgren)*, 109 B.R. 949, 953 (Bankr.C.D.Cal.1990). The plaintiff brought this dischargeability complaint under section 523(a)(2). The complaint concerned a consumer debt, and I have found the debt to be dischargeable.

■ Once this Court finds that the debt is dischargeable, plaintiff must demonstrate to this Court that the complaint was substantially justified. Substantially justified means more than frivolous, or undeserving of sanctions. *Pierce v. Underwood,* 487 U.S. 552, 564, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). To prove a complaint was substantially justified, creditor must prove the complaint had a reasonable basis in law and fact. *FCC Nat'l Bank v. Dobbins (In re Dobbins),* 151 B.R. 509, 512 (W.D.Mo. 1992). *Shurbier* held that the court should award attorney's fees to the debtor "whenever the court finds that the plaintiff proceeded

**192**

with its case past a point where Plaintiff knew or should have known that it could not carry its burden of proof." 134 B.R. at 928. Before filing a section 523(a)(2) Complaint, the plaintiff "must ascertain that it has sufficient facts to support each of the elements necessary to prove its claims." *Kullgren,* 109 B.R. at 954. As shown, plaintiff was able to prove just one of the required five elements to establish fraud.

Aside from proving that debtor's expenses exceeded his income at the time of the bankruptcy filing, Boatmen's representative offered no other evidence that would except this debt from discharge pursuant to the Code or case law. The Code provides two factors which give rise to a presumption of dischargeability. Neither of those factors were present here. Cases have established twelve factors considered by courts in determining whether an intent to deceive can be inferred. Only one, at best, of these twelve factors runs against the debtor. The filing of this action by plaintiff was not substantially justified. Further, plaintiff offered no evidence that there are special circumstances involved in this case that would make an award of attorney's fees and costs unjust.

## CONCLUSION

In accordance with the discussion above, I find the debt which is the subject of this dischargeability complaint to be dischargeable, and as such judgment will be entered in favor of the defendant. I further find that plaintiffs Complaint was not substantially justified and I, therefore, grant debtor's motion for attorney's fees. An Order consistent with this Memorandum Opinion will be entered this date.