In re Cathleen M. CAMERON, Debtor.

**FIRST DEPOSIT NATIONAL BANK, n/k/a Providian Bancorp, Plaintiff,**

v.

**Cathleen M. CAMERON, Defendant.**

Bankruptcy No. 97–40654–KMS.
Adversary No. 97–4063–KMS.

United States Bankruptcy Court,
W.D. Missouri.

March 17, 1998.

Kramer & Frank, P.C., Kansas City, MO, for plaintiff.

Marian M. Moffat, Attorney at Law, Kansas City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER

KAREN M. SEE, Bankruptcy Judge.

### I. INTRODUCTION

In this adversary action, First Deposit National Bank, now known as Providian Bancorp, objected to discharge of its debt under 11 U.S.C. § 523(a)(2)(A), alleging that: 1) Debtor Cathleen Cameron obtained $8,824.24 in cash advances from her Providian Visa account; 2) Debtor's use of the account and her application statement concerning income were false representations of ability and intent to pay on which Providian relied in extending credit; and 3) the debt is presumed fraudulent under § 523(a)(2)(C) because the alleged cash advances exceeded $1,000 and were made within 60 days before filing a Chapter 7 case. Debtor filed an Answer and a Motion to Dismiss and Request For Attorney Fees. At the pretrial conference, issues raised in the motion to dismiss were discussed. Facts outside the pleadings were referenced, so the motion was treated as one for summary judgment under Fed.R.Civ.P. 12(b). Material facts appeared to be undisputed and evidence for the motion would be the same as at trial, so by submitting the case on summary judgment in lieu of trial, the parties decided they could submit testimony by affidavit and avoid having to produce witnesses at trial. Briefs and affidavits were filed and the motion was heard.

The court concludes the fraud presumption of § 523(a)(2)(C) is not applicable. The alleged cash advances were actually transfers of balances of two other credit cards to the Providian card, and the court finds transfers of credit card balances are not cash advances. Additionally, the court finds Debtor made no fraudulent representations to Providian. Judgment is entered for Debtor.

The court has jurisdiction of this core proceeding and may enter final orders pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1) and 157(b)(2)(A), (B), (I), (J), and (O). These findings and conclusions are consistent with those made on the record at the end of the hearing, but due to additional review of the record and authorities, they may modify oral findings. Any findings of fact designated in error as conclusions of law shall be deemed findings of fact and any conclusions of law designated in error as findings of fact shall be deemed conclusions of law.

### II. FACTS

Debtor applied for and received a Visa account with Plaintiff Providian in June 1994. The original $3,000 credit limit remained unchanged until December 1996, when Debtor received an unsolicited, preapproved telephone offer from Providian to transfer credit card balances of $4,982 from her Capital One Visa account and $3,800 from her Mercantile Visa account to her Providian account, which then had a zero balance. Without asking Debtor any questions about employment, income, expenses, or debts, and without requiring her to complete a new credit application or sign a credit agreement, Providian raised Debtor's credit limit to $11,800. Debtor made no representations to Providian about her ability or intent to pay during Providian's

unsolicited call regarding its preapproval of these credit card balance transfers. She did, however, acquiesce to the solicitation and received a notice from Providian, dated December 31, 1996, that the two credit card balances had been transferred to her Providian account. The January 1997 statement showed the transactions were actually posted January 7, 1997. Debtor received no cash from Providian and did not use her Providian card for any subsequent purchases or transactions. Debtor did not consult an attorney before the preapproved credit card balance transfers. After the transfers, Debtor consulted her attorney on January 13, 1997 and filed a Chapter 7 case on February 26, 1997.

## III. LEGAL DISCUSSION

### A. Summary Judgment Standards

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Providian asserts three material fact issues preclude summary judgment: 1) whether the balance transfers are cash advances to which the § 523(a)(2)(C) fraud presumption applies; 2) whether false pretenses, a false representation or actual fraud existed; and 3) whether Providian justifiably relied on implied representations that Debtor was willing and able to pay the charges.

Contrary to Providian's assertion, whether the balance transfers constituted a cash advance is a question of law. The parties submitted the facts concerning the transfers, so the court must determine as a matter of law the nature of the transaction. The court concludes the balance transfers are not cash advances so the fraud presumption of § 523(a)(2)(C) does not apply. It is for the fact finder to decide whether Debtor made false representations or engaged in deceitful or misleading conduct. Providian has failed to present a *prima facie* case of fraud. The evidence before the court consists of the affidavits and exhibits, including Debtor's Chapter 7 file. Analysis of this evidence indicates Providian cannot prevail because it has not proven the elements of fraud. Debtor has clearly exceeded her burden, if any, of going forward with evidence sufficient to rebut fraudulent intent. The issue of whether Providian justifiably relied on fraudulent misrepresentations, if any, of Debtor in extending her credit is resolved by application of the law to the undisputed facts.

The court notes that Providian's affiant stated Providian was substantially justified in extending credit to Debtor. The issue is not whether Providian was substantially justified in extending credit to Debtor. It is not for the court to assess the wisdom of Providian's business decision. The issue is whether Providian has proven that, in extending credit, it justifiably relied on false representations knowingly made by Debtor in order to obtain the credit Providian's affidavit is not helpful because it is largely conclusory and fails to address the issues in a meaningful way. Providian's statements regarding the justifiability of Providian's actions are legal conclusions that would not be admissible in evidence, and as such, are not proper matters for a summary judgment affidavit under Fed. R.Civ.P. 56(e), which provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Providian's affidavit also failed to state any factual basis for affiant's personal knowledge or authority to speak for the plaintiff corporation. In addition, Providian did not identify affiant in its required pretrial disclosures. Debtor requested the affidavit be stricken under Fed.R.Civ.P. 12(f), but for the purpose of ruling on summary judgment, the court will assume Providian could overcome foundation objections in order to give Providian any benefit it can derive from the affidavit. However, a party opposing summary judgment cannot rely on allegations or on evidence which could be produced at trial. The opposing party must come forward with all of its evidence so the court can assess the merits of the case. If the time for responding to a summary judgment motion is insufficient,

then it is incumbent on the party to request additional time. Providian did not make such a request.

### B. Credit Card Balance Transfers Are Not Cash Advances

■ Whether the transfers of balances constitute cash advances must be taken up first because resolution of that question determines which party has the burden of proof. If balance transfers are cash advances, then under § 523(a)(2)(C) they are presumed nondischargeable and Debtor has the burden of going forward with evidence to rebut the presumption. If the balance transfers are not cash advances, then Plaintiff has the burden of establishing each element of fraud under § 523(a)(2)(A) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Friend,* 156 B.R. 257, 260 (Bankr.W.D.Mo.1993).

■ Section 523(a)(2)(A) and (C) provides: A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt

> \* . \* \* \* \* \*

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> \* \* \* \* \* \*
>
> (C) for purposes of subparagraph (A).... cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable. ...

In determining dischargeability, § 523(a)(2) must be strictly construed against the objecting creditor and liberally in favor of the debtor. *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Friend,* 156 B.R. at 260.

■ Although it is not clear from the complaint, at the summary judgment hearing Providian's theory was that the alleged cash advances were in the form of transfers of balances, and being over $1,000 and within 60 days of bankruptcy they were presumptively nondischargeable under § 523(a)(2)(C). Providian's argument fails because the balance transfers are not cash advances. Debtor never requested or received cash drawn against the credit limit of her Providian account. Rather, Debtor accepted Providian's offer to refinance existing balances on two other cards. "Refinance" is defined as: "To finance again or anew; to pay off existing debts with funds secured from new debt. The discharge of an obligation with funds acquired through the creation of a new debt." Black's Law Dictionary 665 (6th ed.1990). This definition describes the transaction in the present case: Debtor paid off existing debts with preapproved funds secured from new debt. Refinancing of debt does not fall within the narrow categories of § 523(a)(2)(C). *See, In re Shurbier,* 134 B.R. 922, 927 (Bankr.W.D.Mo.1991) (payment from new debt on previously incurred debt merely substitutes one creditor for another); *Matter of Smith,* 54 B.R. 299, 302 (Bankr. S.D.Iowa 1985) (refinancing of debt does not fall within § 523(a)(2)(C) categories of non-dischargeable debts). Debtor's obligation to Providian is not presumptively nondischargeable under § 523(a)(2)(C).

*Smith,* 54 B.R. 299, 301–302 (Bankr. S.D.Iowa 1985), is particularly instructive. Debtors borrowed $1,416.97 from a finance company 13 days before filing bankruptcy. Almost all the loan proceeds were used to satisfy a prior debt to plaintiff, although debtors did receive $42.29 in cash. As in the present case, the finance company did not allege the debt was for luxury goods or services. *Smith* concluded the refinanced debt was not a cash advance or non-luxury goods or services since the loan was a renewal or refinancing of credit.

■ In addition to the plain meaning of the statute, legislative intent is also significant in determining whether transfer of existing debt from one credit card to another is a cash advance. In adding § 523(a)(2)(C) on

cash advances and purchases of luxury items, Congress intended to address debtor conduct of "loading up," or going on a buying spree in anticipation of bankruptcy, by creating a rebuttable presumption to make such debt nondischargeable. *Smith*, 54 B.R. at 302–303. No such buying spree occurred here. Debtor received no cash in hand in connection with the balance transfers. Rather, Debtor acquiesced to Providian's ill-advised offer to transfer credit card balances that would have been discharged if Debtor had rejected the offer and filed for bankruptcy.

## C. Plaintiff Cannot Prove the Elements of Fraud

■ In order to prevail, Providian must establish that Debtor committed fraud in obtaining the balance transfers from Providian. To establish fraud under § 523(a)(2)(A), the following five elements must be proved: 1) debtor made representations; 2) at the time the representations were made debtor knew them to be false; 3) debtor made the representations with the intention and purpose of deceiving the creditor; 4) the creditor justifiably relied on the representations; and 5) the creditor sustained the alleged injury as a proximate result of the representations. *Field v. Mans*, 516 U.S. 59, 62–63 n. 4, 116 S.Ct. 437, 440 n. 4, 133 L.Ed.2d 351 (1995); *Thul v. Ophaug*, 827 F.2d 340, 342 (8th Cir. 1987); *In re Ellingsworth*, 212 B.R. 326, 333 (Bankr.W.D.Mo.1997); *In re Willis*, 190 B.R. 866, 868 (Bankr.W.D.Mo.1996). The objecting creditor must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Friend*, 156 B.R. at 260. Providian's objection to discharge under § 523(a)(2)(A) fails because Providian cannot prove Debtor intended to deceive Providian about her ability and intent to repay, and more importantly, because Providian cannot establish that it justifiably relied on any representations made by Debtor.

■ Direct proof of an individual's actual intent is difficult if not impossible to obtain, so courts rely on traditional "badges of fraud" to determine whether it is appropriate to attribute fraudulent intent to a particular debtor. *In re Grayson*, 199 B.R. 397, 402 (Bankr.W.D.Mo.1996) identifies these factors:

1. Length of time between the charges made and filing of bankruptcy;
2. Whether, before the charges, a lawyer was consulted about filing bankruptcy;
3. The number of charges;
4. The amount of the charges;
5. Debtor's financial condition when the charges were made;
6. Whether the charges were above the account's credit limit;
7. Whether Debtor made multiple charges the same day;
8. Whether Debtor was employed;
9. Debtor's prospects for employment;
10. Debtor's Financial sophistication;
11. Whether there was a sudden change in Debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

■ The goal in applying these factors is to determine whether a particular debtor knew she would be unable to repay the specific debt, which knowledge obviously leads to the conclusion that debtor incurred the debt intending not to repay it. *Ellingsworth*, 212 B.R. at 334. Review of these factors in the present case does not benefit Providian, as shown by the following summary:

*1. Length of time between the charges made and filing of bankruptcy:* Using the date most favorable to Providian, the January 7 posting date, 50 days.

*2. Whether, before the charges, a lawyer was consulted about filing bankruptcy.* Debtor consulted an attorney after the charges were made.

*3. The number of charges:* Two balances were transferred.

*4. The amount of charges:* $8,782, solicited and preapproved by Providian.

*5. Debtor's financial condition when the charges were made:* Debtor was current in monthly payments on the two antecedent credit balances. Her Providian account had a zero balance.

*6. Whether the charges were above the account's credit limit:* Providian raised

Debtor's credit limit from $3,000 to $11,800 to make her eligible for these charges.

**7. Whether Debtor made multiple charges the same day:** Yes, two balance transfers, solicited and preapproved by Providian, were the only charges ever made.

**8. Whether Debtor was employed:** Yes, but Providian did not provide any evidence that Providian knew or cared whether Debtor was employed when it solicited her for the preapproved balance transfers.

**9. Debtor's prospects for employment:** No evidence, not applicable.

**10. Debtor's financial sophistication:** No evidence. Providian argued that Debtor is financially sophisticated because the bankruptcy schedules list her occupation as "claims examiner." If this debtor had been financially sophisticated, she would have known not to transfer dischargeable debts to Providian. All she did was make matters worse for herself by raising red flags (or perhaps red herrings). This weighs against her financial sophistication.

**11. Whether there was a sudden change in Debtor's buying habits:** No evidence, but not applicable because Debtor did not acquire money, goods or services. Providian argued at the summary judgment hearing that Debtor loaded up after the balances were transferred. Providian could cite no facts to support the assertion. The basis for this argument was Debtor's Schedule F, which listed the original debts with Mercantile and Capital One as well as the new debt to Providian. Debtor's counsel represented that the listings were protective and duplicative in order to make sure all conceivable debts were listed (and the court notes this is normal practice in preparing schedules; rather than risk omitting a debt, every conceivable listing, even if duplicative, is included in order to assure notice to all possible creditors.). The date the debts were incurred was listed as April 1996, *eight months before* the balance transfers, and the listed debts are substantially identical to the amount of the balance transfers. There was no evidence that Debtor charged up her Mercantile and Capital One balances again. The argument was improper.

**12. Whether purchases were made for luxuries or necessities:** Not applicable.

The only factor in Providian's favor is Debtor's consultation with her attorney soon after the Providian debt was incurred. The test, however, is whether an attorney was consulted before, not after the fact. In any event, Providian has presented mere speculation, not evidence, as to Debtor's reason for consulting an attorney, and the court does not find Providian's arguments persuasive.

 Providian cannot establish any reliance on any representations made by Debtor. Providian argues that Debtor's act of accepting the unsolicited balance transfers and completion of the credit application in 1994 constitute implied misrepresentations of her intent to repay the debt Providian's offer to transfer balances from other credit accounts to an existing Providian account stated that the transfers were preapproved. A letter dated December 31, 1996, from a Providian vice-president to Debtor, attached to Debtor's motion, confirmed that the balance transfer process was under way. Thus, the extension of credit occurred before this time. Debtor's alleged misrepresentation, however, occurred on January 7, 1997, presumably the date Providian transferred the balances to Debtor's Providian Visa. Thus, Providian essentially argues it relied on a representation that occurred *after* Providian extended the preapproved offer to Debtor.

An analogous argument was rejected in this district in *In re Shurbier,* 134 B.R. 922, 925 (Bankr.W.D.Mo.1991), where the creditor finance company objected to discharge of a loan which was made by mailing an unsolicited check to the debtors. Debtors, who did not apply for or request the check prior to its receipt, cashed it a week later and subsequently filed a Chapter 7 case. Judge Koger rejected the creditor's arguments, stating: "Absent proof of Beneficial's clairvoyant abilities, this Court is hard pressed to find that Beneficial relied upon a representation which occurred subsequent in time to Beneficial's action of issuing the check." *Shurbier,* 134 B.R. at 925.

Even assuming some form of reliance exists, which the court does not find, it does not rise to the level of justifiable reliance required by the Supreme Court in § 523(a)(2)(A) cases. Under this standard, which is lower than "reasonable reliance," a creditor must "use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field*, 516 U.S. at 71, 116 S.Ct. at 444.

The evidence is undisputed that Providian solicited Debtor to transfer $8,824 of antecedent debt to a Providian account, and in order to facilitate those preapproved transfers, Providian unilaterally raised Debtor's credit limit by 393% without any inquiry into Debtor's income, expenses, or debts. Apparently, Providian relied on whatever information it obtained two and a half years earlier when Debtor applied for credit in June 1994. Providian's only evidence is an unsigned Customer Response Form dated "6/14" that indicated Debtor was employed with an annual household income of "$approx. 20K". The employer's name is not given and the form does not show the year, the source of information, or who obtained the information. There is no evidence of whether the information was accurate. This evidence—or lack of evidence—establishes that Providian failed to make any meaningful examination of Debtor's financial status at the time it extended the preapproved balance transfer to her. Accordingly, Providian did not prove it justifiably relied on any representation made by Debtor at the time she accepted the preapproved balance transfers.

Finally, Providian cannot establish justifiable reliance on the 1994 credit application in extending the preapproved balance transfer offer in 1996. Under § 523(a)(2)(A), a creditor must show that reliance on a debtor's representations was justified based on the facts available to the creditor at the time of the credit offer. *Willis*, 190 B.R. at 870. A creditor is required under the justifiable reliance standard to utilize the opportunity to make a cursory examination or investigation of the debtor's representations. *Field*, 516 U.S. at 70–72, 116 S.Ct.

at 444; *Willis*, 190 B.R. at 870. Providian has not claimed Debtor made false statements or fraudulent omissions of material fact on her 1994 credit application. Even if it had made such a claim, Providian cannot be said to have justifiably relied on a credit application completed thirty months before the extension of credit. *See, Willis*, 190 B.R. at 870 (creditor could not prove justifiable reliance on credit application completed three years before use of card). Furthermore, because the transfers were preapproved, Providian failed to require a new credit application or to make any investigation of Debtor's financial status in late 1996 when it extended the transfer offer. Accordingly, Providian cannot establish the justifiable reliance element of fraud. Therefore, Providian's objections to discharge under § 523(a)(2)(A) fail.

### D. ATTORNEY FEES AND COSTS

Debtor filed a Motion to Dismiss and Request for Attorney Fees in conjunction with her answer. At the conclusion of the summary judgment hearing, the court instructed Debtor to submit a fee application and both parties to brief the attorney fee issue. After review of briefs and authorities, the court finds an award of attorney fees is warranted. Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

In order to prevail on a motion for attorney fees, a debtor must establish five elements: 1) the creditor filed a dischargeability complaint under § 523(a)(2); 2) the complaint concerned a consumer debt; 3) the debt was found dischargeable; 4) the court found the complaint was not substantially justified; and 5) there are no special circumstances that would make an award unjust. *Friend,*

156 B.R. at 262; *Shurbier,* 134 B.R. at 927. The first three elements are met.

Debtor's attorney submitted a fee application with an itemized statement for fees and expenses of $6,132.95. Providian objected to the total of the bill but did not question the reasonableness of any particular item. Providian did not expressly address whether the case was substantially justified, but the court will assume it did. Finally, Providian asserted special circumstances existed that would make an award unjust and that fees requested were punitive.

 Once the court finds a debt is dischargeable, the plaintiff must demonstrate that the complaint was substantially justified in that the complaint had a reasonable basis in law and fact. *Friend,* 156 B.R. at 262. Attorney fees should be awarded to a debtor when a plaintiff proceeds with a case past the point at which plaintiff knew or should have known it could not carry its burden of proof. *Friend,* 156 B.R. at 262; *Shurbier,* 134 B.R. at 928. Before filing a dischargeability complaint under § 523(a)(2), a plaintiff must determine that there are sufficient facts to support each of the elements necessary to prove its claim. *Friend,* 156 B.R. at 262.

 Providian cannot prove substantial justification. As repeatedly indicated in the legal discussion above, examination of the statute, legislative history, relevant authorities and the facts establishes that Providian did not have a legal or factual basis for its complaint Providian's factual allegations do not give rise to a § 523(a)(2)(A) or (C) action. Reasonable investigation and analysis of the facts before filing would have shown the lack

of substantial justification. Providian could have determined there were no cash advances, no representations and no reliance on any representation. Providian failed to adequately investigate the situation before signing and filing the complaint to determine whether additional facts existed to substantiate its claim. Providian did not attend the § 341 meeting, notwithstanding that it gave Providian an easy opportunity to investigate its claim and determine whether there was substantial justification for a dischargeability complaint. *See, In re Grayson,* 199 B.R. at 402 (§ 341 meeting and Rule 2004 examinations are available forums for creditors to determine whether filing of dischargeability complaint is substantially justified). This court does not believe a creditor is required to attend the § 341 meeting before filing a dischargeability complaint, so long as some means of adequate investigation is employed. Here, Providian failed to avail itself of the § 341 meeting or any other opportunity to investigate the merits of its claim. Because there is no basis in law or fact for Providian's complaint, its claim is not substantially justified.[1]

 There are no special circumstances in this case that would make an award of attorney fees unjust. To the contrary, circumstances strongly support an award of attorney fees. Debtor incurred the debt solely because of Providian's unsolicited offer of preapproved balance transfers, which Providian extended without investigation, and then was forced to incur expense when Providian, again without investigation, filed a dischargeability complaint Providian's conduct

1. The difference in the allegations in the complaint and the facts as they finally emerged in summary judgment proceedings was addressed at various times during the case, such as at the pretrial conference, in terms of the difficulty in understanding the complaint because it did not seem to jibe with some of the legal issues discussed. However, the complaint was not addressed head-on as one containing patently incorrect factual allegations (perhaps in part because it was difficult to understand Providian's counsel, as discussed elsewhere herein). In both the original and amended complaints, it is alleged that Debtor obtained *both* cash advances and balance transfers (para.5), and that Debtor received cash advances and made purchases (para.6). It is undisputed,

based on Providian's own evidence, that no purchases were made, and the only potential cash advances were the balance transfers. Providian is fortunate that opposing counsel did not raise Rule 11 or Rule 9011 issues. These gross factual inaccuracies lend support to the perception, as discussed in cases such as *Grayson,* that complaints are sometimes filed with insufficient investigation. Factually incorrect allegations could easily influence the mind set of a debtor's attorney to encourage a prompt settlement rather than battle what might appear to be a strong case. Mistakes happen, of course, but if in a number of cases complaints are chronically incorrect, overbroad or overly vague, at some point the practice appears abusive.

falls squarely within the congressional intent behind § 523(d): "to discourage creditors from initiating proceedings to obtain a false financial statement exception to discharge in hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees." *Friend,* 156 B.R. at 262, *quoting* S.Rep. No. 989, 95th Cong.2d Sess. 80 (1978), 1978 U.S.Code Cong. & Admin.News, p.·5866.

Providian argued that this case concerning transfers of balances was, in effect, a case of first impression and Providian should not be penalized for filing it and proceeding to the point of the summary judgment hearing. Providian's argument that this is a true case of first impression is without merit. At the outset of the case, Debtor filed a motion to dismiss and brief—the same one to which Providian now objects as an unreasonable expense—which discusses two cases within the Eighth Circuit that are on point (both of which are discussed earlier in this opinion). Had Providian paid heed to the brief when it was filed at the outset of the case, it might have reviewed its case and avoided altogether the issue of paying attorney fees to a prevailing debtor. In this district, there is a published decision on substantially the same issue, dischargeability of a debt for refinancing. *In re Shurbier,* 134 B.R. 922, 925 (Bankr.W.D.Mo.1991). In fact, *Shurbier* involved a situation similar to the present case in that the credit was extended on an unsolicited, preapproved basis, and any implied representations by debtors were after the approval and after the credit was extended, thus negating reliance. There is a second published decision in the Eighth Circuit which is substantially similar to the present case. *Matter of Smith,* 54 B.R. 299, 301–302 (Bankr.S.D.Iowa 1985). It must also be noted that in general terms, there are large numbers of decisions from this district to provide guidance to parties on the issues in credit card fraud cases. As just one example, cited herein, Providian is directed to *In re Ellingsworth,* 212 B.R. 326 (Bankr.W.D.Mo. 1997), which is notable for the fact that a preface to the opinion is a lengthy review of the evolution of the credit card industry, with an analysis of its practices and the effects on consumers and society.

Even if this were a case of first impression, Providian is or should be aware of the legislative history of § 523(a)(2)(C), referenced earlier in this opinion, concerning Congressional intent to discourage debtors from "loading up" on luxury goods or cash advances (with which to buy goods or services) immediately before bankruptcy. On its face this case does not involve "loading up" since Debtor received no spendable cash, her debt level was exactly the same before and after the transaction, and all she did was shoot herself in the foot by refinancing debt that was otherwise dischargeable. Finally the "case of first impression" argument is without merit because it applies only to the part of the case under § 523(a)(2)(C) for a presumption of fraud for alleged cash advances. The first impression argument has no application to the alleged non-presumptive fraud, which is not based on a cash advance theory, or to the factually incorrect allegation that Debtor also made purchases.

With the above said in regard to Providian's "case of first impression" argument, Providian was not required to assume this court would follow *Shurbier* and *Smith,* since they are not decisions of the Eighth Circuit Court of Appeals and therefore, are not binding on this court. However, in a credit card fraud case plaintiff must proceed with the knowledge that it is taking a risk since the fee statute is mandatory and provides that if the creditor's position was not substantially justified, fees *shall* be awarded *unless* special circumstances would make fees unjust. It is difficult to understand how any special circumstances weigh in Providian's favor since the dearth of evidence presented at the summary judgment hearing makes it clear that Providian had virtually no evidence of any representation by Debtor and no evidence whatsoever that it relied on any representation. In looking at the relative economic strength of the parties, and the expense involved in not simply caving in to the dischargeability complaint, as addressed in *In re Grayson,* 199 B.R. 397 (Bankr.W.D.Mo. 1996), the court must conclude this is precisely the type of case Congress intended to discourage by enacting § 523(d) to award attorney fees to prevailing debtors.

Debtor's attorney submitted an itemized statement for 55.54 hours at $110 per hour spent defending against the dischargeability complaint, for attorney fees of $6,112.00, plus photocopy costs of $20.95, for a total of $6,132.95. Providian objected to the total of the bill but did not question the reasonableness of any particular item. The court can act as its own expert regarding the reasonableness of attorney fees. *Bergeson v. Dilworth,* 875 F.Supp. 733 (D.Kan.1995). In this case, the court finds the statement of fees is fair and reasonable as to the hourly rate, the services provided and the time and effort expended, especially in light of the nature of the case and the difficulties observed by the court in dealing with Providian's counsel.[2]

As noted, Providian did not contest any particular entries, but only the total, and it failed to provide any specific reason why the total was unreasonable as to the time spent, hourly rate or services provided. Thus, the objection can be summarily rejected on the issue of reasonableness. Although Providian failed to contest any specific aspect of the fees, the court will address issues of reasonableness as to time spent, hourly rate and services provided. First, it is noted that counsel's work was excellent in every respect, from research and briefing to the result achieved for her client. At the outset, 20 hours, i.e. two and one half days, were spent on research and preparation of the answer, motion to dismiss and request for attorney fees and a brief in support. The comprehensive research and briefing done early on was the solid base on which the rest of the case was built. The research was not excessive and was not in any degree wasted time since it was used not only in drafting the answer,

but in the motion to dismiss and brief filed the same day as the answer, and the summary judgment proceedings. The brief discussed numerous cases, including two cases in the Eighth Circuit on refinancing of debt which were on point for the cash advance as presumptively fraudulent count. Providian argued in its objection to fees that its complaint presented novel issues, so it cannot complain that it took additional time to research and brief the issues. On the other hand, the complaint is not clear, in that it alleges there were purchases, plus both cash transfers *and* balance transfers on the same day, so Debtor should not be penalized for spending time to respond to issues which were unclear and overly broad and allegations which were factually incorrect.

If the research had not been performed at the outset, subsequent fees would have been greater as counsel would have been required to research and brief issues in a piecemeal fashion. By filing the motion to dismiss and request for attorney fees along with a brief, Debtor raised issues that resulted in Debtor having significant input over the direction of the case. Based on the court's experience in reviewing attorneys' fee applications and work product, 20 hours is not excessive for the services provided. Likewise, the remaining services appear reasonable as to time spent, including compliance with the pretrial order by filing items such as exhibits and exhibit and witness lists (which plaintiff failed to do), preparation for and appearance at the pretrial conference (where other motions were also taken up), submission of briefs, affidavits and evidence for the summary judgment hearing, preparation and appearance for extensive argument at the hearing, and preparation of proposed findings and

2. In regard to dealing with counsel, two attorneys entered successive appearances. Neither appeared to have knowledge of rules of procedure, local rules, or dischargeability issues, thus multiplying the work for opposing counsel, court staff and the judge. The attorney who appeared for Providian for the bulk of the case, including at the summary judgment hearing, seemed to have no grasp of the issues raised in pleadings and briefs, whether filed by Providian or Debtor, thus increasing opposing counsel's work. For example, the summary judgment hearing was much more protracted and difficult than one would normally anticipate. Additional observa-

tions of specific events could be made, but what has been stated seems sufficient to suggest the nature of the problems. It is always a difficult decision as to whether and to what degree to reference counsel problems. There is no desire to embarrass any person, yet sometimes the impact on the case or the opposing party must be noted. Out of an abundance of caution it is noted that in this case the referenced counsel for Providian was *not* Kathryn A. Klein, who represents Providian and other credit card companies in St. Louis, and who has a very good reputation in this court.

conclusions, plus a brief and reply brief on attorney fees.

From review of the briefs in this case and other credit card cases before the court, it appears that Providian, an institutional party that files many credit card dischargeability cases in the Western District of Missouri and around the nation, is able to use research, pleadings and briefs from previous cases. This individual Debtor and her attorney, a sole practitioner, do not have that luxury, and Debtor should not be penalized for retaining an attorney who did an excellent job but who did not have the benefit of research and form files. In conclusion, the court finds the time expended and the services provided were reasonable.

Although there is no question in the court's mind as to the reasonableness of the time spent, any time one could conceivably consider as beyond reasonable has been adjusted by the hourly rate of $110. Based on the courts experience in reviewing attorneys' fee applications and work product, the court concludes $110 is a low hourly rate for an attorney with 20 years of experience (counsel was admitted to practice in 1978) producing work and achieving results of the quality in this case. Finally, based on the foregoing, the court rejects Providian's unsupported assertion that allowance of fees in the amount requested would be punitive.

In conclusion, the court finds the statement of fees is fair and reasonable as to the hourly rate, the services provided and the time and effort expended, especially in light of the nature of the case and the difficulties observed by the court in dealing with Providian's counsel. The court grants Debtor attorney fees and costs of $6,132.95.

### IV. CONCLUSION

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED:

1. Debtor/Defendant's Motion for Summary Judgment (originally filed as a Motion to Dismiss) (Doc. No. 7) is GRANTED and judgment is entered in favor of Debtor/Defendant Cathleen M. Cameron and against Plaintiff First Deposit National Bank, n/k/a Providian Bancorp.

2. Debtor/Defendant's Request for Attorney Fees is GRANTED (Doc. No. 7) and Plaintiff is ordered to pay Debtor/Defendant $6,132.95 within 10 days of entry of this order.